STATE v. RICHARD VIRGIL.

(Filed 25 November, 1964.)

**1. Criminal Law § 168—**

In passing upon defendant's exception to the refusal of his motion to nonsuit, all of the evidence admitted at the trial, whether competent or incompetent, must be considered.

**2. Criminal Law § 101—**

    Defendant's motion to nonsuit is properly overruled if there is evidence to support a conviction of the crime charged or an included crime. G.S. 15-170.

**3. Criminal Law § 48—**

    Officers of the law obtained a confession from one of the parties charged with perpetrating the offense, read the confession to defendant and took defendant to the hospital room where the party who had made the confession made statements implicating defendant. *Held:* Defendant's silence in the face of the accusation is not competent as an implied admission of guilt since such implied confession was not voluntary, and therefore testimony as to the accusations is incompetent as hearsay.

APPEAL by defendant from *McLaughlin, J.,* April "A" Session, 1964, of WAKE.

    Defendant was indicted in a bill charging burglary in the first degree as defined in G.S. 14-51.

    Plea: "Not Guilty."

    Verdict: "Guilty as charged with recommendation that the punishment be imprisonment for life."

    Judgment, imposing a sentence of life imprisonment, was pronounced. Defendant excepted and appealed.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*

*George M. Anderson for defendant appellant.*

BOBBITT, J. The State's evidence, in brief summary, tends to show:

    On February 9, 1963, about 3:00 a.m., T. S. Matthews, part owner, was sleeping inside the premises of Matthews & Gentry Service Station and Grocery. He was awakened by a tapping noise at one of the outer doors. Thereafter, one Oliver Evans broke a glass panel in an overhead door to the garage portion of the premises, entered where the glass panel had been broken and then, passing through a swinging door, entered the portion of the premises in which Matthews had been sleeping. Matthews' dog barked. Evans fired his shotgun and injured Matthews. Matthews fired his shotgun and injured Evans. Evans got out of the building and with difficulty reached the shoulder of the road. A car came along and stopped. When Evans attempted to get in this car, Matthews "fired a pistol over the top of this car 2 or 3 times," and the car "immediately sped off and left this man (Evans) lying on the shoulder of the road."

There was evidence tending to connect defendant with the crime. Decision on this appeal is based on the admission over defendant's objections of the portion of such evidence set forth below.

Defendant's assignments of error, based on his exceptions to the court's denial of his general motions for judgment as of nonsuit, are overruled. Pertinent legal principles include the following: (1) Admitted evidence, whether competent or incompetent, must be considered in passing on defendant's motions for judgment as of nonsuit. *S. v.. McMilliam,* 243 N.C. 771, 774, 92 S.E. 2d 202; *Early v. Eley,* 243 N.C. 695, 700, 91 S.E. 2d 919; *Kientz v. Carlton,* 245 N.C. 236, 246, 96 S.E. 2d 14. (2) A motion for judgment as of nonsuit addressed to the entire bill is properly overruled if there is evidence sufficient to support a conviction of the crime charged or of an included (G.S. 15-170) crime. *S. v. Brooks,* 206 N.C. 113, 114, 172 S.E. 879; *S. v. Marsh,* 234 N.C. 101, 105, 66 S.E. 2d 684.

Defendant assigns as error the admission over his objections of testimony of Deputy Sheriff Covert as to statements made by Oliver Evans on February 12, 1963, at Wake Memorial Hospital. The facts in evidence bearing upon the competency of this testimony are stated below.

Covert arrested defendant shortly after 7:30 a.m., February 9, 1963, and put him in the Wake County Jail. Thereafter, defendant was in custody. Covert advised defendant he was "under arrest for burglary." Between February 9th and February 12th, Covert questioned defendant "several times." Covert testified: "Virgil repeatedly told me that he did not know anything about the breakin."

From early morning on February 9th until February 12th and thereafter, Evans was a patient in Wake Memorial Hospital. On the night of February 11th, Covert went to the hospital and obtained a statement signed by Evans "of where he was and what happened on the morning of the 9th." Covert testified: "After obtaining the statement I came back and confronted Virgil with it. I read it to him." (Note: The written statement was not offered in evidence.)

The following day, February 12th, defendant was taken to Evans' hospital room. In the presence of Evans, A. G. Scarborough, a deputy sheriff, and defendant, Covert read the statement he had obtained from Evans the preceding night and asked Evans if it was true. Evans stated it was true. Thereafter, according to Covert, Evans made the following statement in the presence and hearing of defendant: "Richard, you know you carried me down to Mr. Poole's Store, which I broke into, didn't get much money. We talked it over and decided to go to Matthews & Gentry, went to Matthews & Gentry. I broke in, I got

shot, came back out to the road, I tried to get in your car, and I said, 'Richard, I have been shot, carry me to the hospital,' you drove off and left me there to die."

Covert testified: "When Oliver Evans made this statement, Virgil dropped his head and begun to cry — shake all over. After Oliver Evans made this statement that I have testified to to Richard Virgil, Richard Virgil had an opportunity to make any statement that he might want to in reply. I asked him, I said, 'Richard, how about it?' He didn't say anything, kept crying and shaking. I then brought him back to the Wake County jail. Deputy Scarborough and myself sat in the car in the parking lot and talked to him for several minutes; he cried continuously until we put him back in the lockup. He never made any statement as to Oliver Evans' statement not being true, said he didn't see why he would do that. That was all he ever said. He made this statement in the parking lot. We were in Evans' hospital room some three or four minutes after he made this statement before we took Richard away."

A warrant charging defendant with burglary "was signed" by Covert on February 15th and served on February 16th.

Nothing else appearing, Covert's testimony as to what Evans said was incompetent as hearsay and therefore inadmissible. Stansbury, North Carolina Evidence, § 138. Here, the competency thereof depends upon whether, under the circumstances, defendant's failure to deny such statements may be considered an implied admission of the truth thereof. Competency is to be determined by legal principles established by decisions of this Court reviewed and applied in *S. v. Temple,* 240 N.C. 738, 83 S.E. 2d 792, and in *S. v. Guffey,* 261 N.C. 322, 134 S.E. 2d 619. See Stansbury, *op. cit.,* § 179.

According to undisputed evidence: Defendant was under arrest and in custody from February 9th through February 12th. Covert had advised defendant, he was under arrest for burglary. Covert questioned defendant *several times* and defendant *repeatedly* told Covert he knew nothing about the alleged burglary. No warrant charging defendant with burglary had been issued. Under these circumstances, Covert "took" defendant to Evans' hospital room. Against this factual background, defendant's failure to deny Evans' incriminating statements may not, in our opinion, be considered an implied admission of the truth thereof.

Moreover, as stated by *Moore, J.,* in *S. v. Guffey, supra:* ". . . an admission or confession, even where it may be implied by silence, must be voluntary. Any circumstance indicating coercion or lack of voluntariness renders the admission incompetent. *State v. Hawkins,* 214 N.C.

326, 199 S.E. 284; *State v. Dills*, 208 N.C. 313, 180 S.E. 571. No one can be forced to incriminate himself, or to make a false statement to avoid doing so. *State v. Dills, supra.*" In our view, defendant's presence and conduct in Evans' hospital room on February 12th may not reasonably be considered voluntary on the part of defendant.

Under the circumstances disclosed by the evidence, we are of opinion, and so hold, that Covert's testimony as to Evans' statements (declarations) was incompetent and that the admission thereof was prejudicial error.

New trial.