STATE OF NORTH CAROLINA v. TOMMY FULLER.

(Filed 20 June, 1967.)

**1. Criminal Law § 42—**

A baseball bat, identified by an eye witness as the one used by defendant in striking deceased, is competent as an exhibit, and there is no requirement that the testimony of the witness be corroborated.

**2. Homicide § 20—**

Evidence tending to show that defendant, after an altercation, struck the unarmed deceased in the back of the head with a baseball bat, that deceased was standing with his back to defendant at the time, and that the blow caused death, *held* sufficient to overrule nonsuit in a prosecution for homicide.

**3. Criminal Law § 71—**

Testimony on the *voir dire* to the effect that an eye witness accused defendant of inflicting a mortal injury on the unarmed deceased, and that defendant was advised that anything he said or did not say in response could be used for or against him, *held* to render incompetent defendant's incriminating statement in reply, since such statement could not be voluntary in view of the fact that defendant was advised that the failure to make a statement might be used against him.

**4. Criminal Law § 48—**

Defendant's silence in face of an accusation of guilt cannot be competent as an implied admission when the accusation is made during interro-

gation of defendant by officers of the law. To compel defendant to reply to an accusation under such circumstances on pain of having his silence considered against him would amount to an infringement of his constitutional right not to be compelled to incriminate himself. Constitution of North Carolina, Art. I, § 11.

**5. Criminal Law § 84—**

Where corroborating evidence includes incompetent and prejudicial testimony of a fact independent of and unrelated to the corroboration, the testimony is incompetent.

**6. Homicide § 30—**

Where, in a prosecution for murder in the first degree, the solicitor announces that he would not seek a verdict graver than murder in the second degree, a verdict of the jury of "guilty as charged" leaves the matter in conjecture, and the court should require the jury to be more specific.

APPEAL by defendant from *Copeland, S.J.*, at 18 July 1966 Criminal Session, DURHAM County Superior Court, docketed and argued at Fall Term 1966 as No. 744.

The defendant was charged with murder in the first degree of Robert Jenkins. At the call of the case, the Solicitor announced he would not ask a verdict of murder in the first degree, but would seek a verdict of murder in the second degree or manslaughter as the facts might justify.

Upon a verdict of guilty as charged, the court imposed a prison sentence of not less than 25 and not more than 30 years.

Defendant appealed.

The evidence for the State tended to show that the deceased, the defendant, and two women had been in deceased's room for several hours, drinking, when the deceased and defendant got into an argument "about women." The deceased went to the window, and while his back was turned, defendant hit him in the back of the head with a baseball bat. He fell to the floor, and the defendant took off deceased's trousers, got his money — sixty cents — out of his pocket, and bought wine and liquor with it. Some hours later the deceased was taken by ambulance to a hospital. He died — apparently soon after being struck — although the record is vague about it. The Coroner testified that in his opinion the deceased had died as a result of a blow on the back of his head, and that the baseball bat exhibited to him could have been the instrument inflicting the damage found to the head and brain of deceased.

The defendant was represented by court-appointed counsel, who noted proper exceptions throughout the trial.

STATE *v.* FULLER.

*T. W. Bruton, Attorney General, and James F. Bullock, Assistant Attorney General, for the State.*

*William A. Marsh, Jr., Attorney for defendant appellant.*

PLESS, J. Upon his appeal the defendant through his counsel presents four questions, three of which are without merit. The other is well taken and entitles the defendant to a new trial for the reasons stated later.

The defendant challenges the admission into evidence of the baseball bat, saying there was "no corroborating evidence connecting the defendant with the exhibit." However, an eye witness to the event identified it as being the one used by Fuller to strike Jenkins. This alone made it admissible as an exhibit. No corroborating evidence is required.

The defendant also complains that G.S. 1-180 was violated for the failure of the judge to give certain instructions to the jury. In view of the result here, this will not recur in a later trial and therefore requires no discussion.

Another exception is to the failure of the Court to allow the motion for nonsuit. The State's evidence, outlined below, demonstrates beyond question that the Court was correct.

Margaret Campbell testified that she was with Robert Jenkins and Tommy Fuller on the night of April 2 and the morning of April 3 in the Old Jones Hotel, and that all of them were drinking. During the night Fuller and Jenkins started arguing, and Robert turned away and was standing at the foot of the bed when Tommy Fuller hit him in the back of the head with a baseball bat; that Robert was looking out of the window and facing away from Fuller when he was struck. She identified a baseball bat which was shown to her as being the one with which Fuller struck Robert Jenkins, and it was thereupon offered as an exhibit and admitted in evidence. She testified that the bat was standing at the door about seven feet from Jenkins when Fuller picked it up; that Fuller walked about three steps and hit Robert in the head; that Robert fell to the floor and did not move after he hit the floor; that Tommy picked him up and threw him on the bed; that she did not see any other weapon than the baseball bat, and that Jenkins did not have anything in his hands. In addition, she testified that at daylight she told Fuller that Robert was sleeping mighty late; that Tommy looked down there and said, "No wonder, he is hurt." She further testified that she took sixty cents from Robert's pocket, and that she and Tommy went across the street, bought a half pint of wine and a quart of whiskey. Upon their return to the room, she saw "Robert was still

out," and she told Tommy to call an ambulance, which he did, and Jenkins was then taken to the hospital. He died a few hours later.

The Court then permitted the State's witness, Detective Cox, to testify as follows:

> "Margaret Campbell told Detective Allen and myself, *in the presence of Tommy Fuller,* that they were in Robert Jenkins' room drinking; that Tommy and Jenkins engaged in an argument; and that Tommy reached beside the door and hit Jenkins in the back of his head with a baseball bat and knocked him down; he picked him up and put him on the bed; and Jenkins rolled off the bed; that Tommy Fuller went and sat down in a chair and she thought he went to sleep, she said he went to sleep.
>
> \*    \*    \*
>
> "I recognize State's Exhibit E, which has been introduced into evidence. It is a baseball bat that was found in Robert Jenkins' room. Margaret Campbell did have something to say to me about the baseball bat there in the room. It was there when she was making her statement.
>
> ". . . She said *in the presence of Tommy Fuller* that that was the baseball bat he used to hit Robert Jenkins." (Emphasis added.)

Defendant's motion to strike was overruled. Cox then testified, *inter alia:*

> "After Margaret Campbell finished telling me that, the defendant Tommy Fuller was asked if he had anything to say in regard to her statement and said, 'Yes, I hit the man, but I did not think I hit him that hard.' "
>
> \*    \*    \*
>
> "Margaret Campbell stated *in Tommy Fuller's presence* that he and Robert Jenkins (deceased) were arguing. . . ." (Emphasis added.)

Prior to the admission of this testimony, Officer Cox had been examined upon *voir dire* in the absence of the jury with reference to Margaret Campbell's confrontation of defendant. Defendant was also heard. At the conclusion of the *voir dire,* Judge Copeland made specific findings of fact. Summarized (except as quoted), they were that all of defendant's constitutional rights had been fully protected, that the officers offered him no reward and threatened him with no violence; that *"he was advised by the officers that anything*

*he said or did not say in response to anything said by Margaret Campbell could be used for or against him"*; and that, if he made any statement, it was made freely and voluntarily. Defendant excepted to each of his Honor's findings.

In *State v. Ross,* 269 N.C. 739, 153 S.E. 2d 469, we cited *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1. as follows:

> " 'When the State proposes to offer in evidence the defendant's confession or admission, and the defendant objects, the proper procedure is for the trial judge to excuse the jury and, in its absence, hear the evidence, both that of the State and that of the defendant, upon the question of the voluntariness of the statement. In the light of such evidence and of his observation of the demeanor of the witnesses, the judge must resolve the question of whether the defendant, if he made the statement, made it voluntarily and with understanding. [Citations omitted.] The trial judge should make findings of fact with reference to this question and incorporate those findings in the record.' "

In that opinion, as in other recent opinions, we cited the Court's summary of the rulings in *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. ed. 2d 694, which is applicable here. No purpose would be served by further repetition. It includes the following sentence: (The defendant) "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, . . ." When the officer told the defendant that "anything he said, *or did not say,* in response to anything said by Margaret Campbell could be used for or against him," it violated the above rulings as well as the provisions of the North Carolina Constitution, Article I, § 11, which says that no person charged with crime shall be compelled to give self-incriminating evidence.

There are times when an accused's silence is admissible against him, but this must be done on occasion when a reply from him might be properly expected. *State v. Temple,* 240 N.C. 738, 83 S.E. 2d 792.

In *State v. Moore,* 262 N.C. 431, 437, 137 S.E. 2d 812, Higgins, J., enunciated the principle here involved:

> "A suspect is not required to defend himself or prove his innocence to investigating officers. When they accuse him, he may decline their invitation to plead to their charge. Ordinarily, silence, or refusal or failure to deny may be shown only when an accusation is made in the presence of an accused — not by investigating officers who get their information second-hand — but only by someone who has first-hand knowledge and makes

a charge based thereon which the occasion, the nature of the charge, and the surrounding circumstances would call for a denial if the accusations were untrue."

Had the officer told the defendant that he could make any comments he desired with reference to Margaret Campbell's statement or that he could make none at all, that, if he made any comments, they could be used against him, and that if he chose to remain silent, his silence could not be used against him, the evidence would have been admissible. However, when he was told that "anything he said or did not say . . . could be used for or against him," the evidence became inadmissible under the above rulings. To make a prisoner listen to an accuser with the admonition that if he talks or doesn't talk — to be damned if he does, and to be damned if he doesn't — is to put him in an impossible position. It violates the rights of the captive audience, which constitutes reversible error.

While the statement Margaret Campbell made to the officer could have been related by him in corroboration of her testimony from the witness stand, it constituted error to disclose to the jury that it was made in defendant's presence.

The verdict rendered by the jury in this case was "guilty as charged." The charge was first degree murder, but the Solicitor had announced that he would not seek that verdict, but one of guilty of murder in the second degree or manslaughter. From the sentence imposed, it is apparent that the Court considered it as a verdict of guilty of murder in the second degree. However, under these conditions, the matter should not be left to conjecture or surmise, and the Court should have required the jury to be more specific.

The defendant is entitled to a

New trial.