STATE OF NORTH CAROLINA v. J. C. CASTOR

No. 68

(Filed 15 May 1974)

**Constitutional Law § 33; Criminal Law § 48— silence of defendant in presence of State's witness — implied admission of guilt — error**

Where defendant was in custody and charged with murder, his silence when a prospective State's witness was brought into his presence and questioned concerning what she had previously related to an officer in the absence of defendant could not be considered an admission of the truth of incriminating statements made by the witness, and the trial court committed prejudicial error in allowing testimony with respect to the confrontation into evidence and in instructing with reference thereto. Constitution of N. C., Art, I, § 23; G.S. 8-54; Constitution of the U. S., Amendments V, XIV.

Justice HUSKINS dissenting.

APPEAL by defendant under G.S. 7A-30(1) from the decision of the Court of Appeals, reported in 20 N.C. App. 565, 202 S.E. 2d 281, which upheld the verdict and judgment in defendant's trial before *Judge Collier,* and a jury, at the 15 November 1971 Session of CABARRUS County Superior Court.

Defendant was indicted, in the form prescribed by G.S. 15-144, for the murder of Pearl Walker on 24 June 1971.

Edith Elaine Crisco (Elaine), age 19, testified she was with defendant and Phillip Scearcy in Scearcy's car on the night of 24 June 1971; that defendant had a sawed-off shotgun and Scearcy had a rifle; that she parked the car down the road from Pearl Walker's house; that defendant left the car and went into

Pearl Walker's house; that she did not hear what occurred inside the house until she heard a woman say, "Lord, have mercy on me," and shortly thereafter, she heard a shotgun blast; and that defendant came out of Pearl Walker's house, with the sawed-off shotgun, and got back in the car with her and Scearcy.

On Friday, 25 June 1971, at approximately 11:30 a.m., J. G. Barrier, an employee of the State Bureau of Investigation, found the body of Pearl Walker on the floor of the living room of her home. She was lying on her back, next to a couch, in a pool of blood. Portions of her home had been ransacked.

A pathologist examined the body of Pearl Walker on 25 June 1971 at 11:45 a.m., approximately twelve hours after her death. He removed pellets and wadding from a shotgun wound which extended into her neck from across her shoulder. In his opinion, this shotgun wound was the proximate cause of her death.

Elaine was arrested on Thursday, 1 July 1971. Barrier talked to her briefly that night and talked to her again on Thursday, 8 July 1971, at which time he took her to the house of Pearl Walker. Barrier testified to statements made to him by Elaine when defendant was not present. This testimony was offered and admitted only for the limited purpose of corroborating her earlier testimony.

A warrant charging Elaine "for accessory after the fact" was issued on Thursday, 1 July 1971, or on Friday, 2 July 1971.

A warrant was issued for the defendant, who was arrested in Jacksonville by Florida officers. He waived extradition and returned voluntarily to Cabarrus County in Barrier's custody.

Testimony admitted over defendant's objection with reference to what occurred when Elaine and defendant, both under arrest and in custody, were brought together by Barrier, will be set forth in detail in the opinion.

Defendant did not testify. He attacked the credibility of Elaine by cross-examination and by witnesses whose testimony tended to contradict her testimony in various respects. Oliver Walker, a witness for defendant, testified he was a grandson of Pearl Walker and that he talked with her at her home about 8:15 a.m. on Friday, 25 June 1971.

In rebuttal, the State offered the testimony of Jack Richardson, a Special Agent for the State Bureau of Investigation, to

the effect Oliver Walker first told the officers he had gone to his grandmother's house on this Friday morning and had talked to her about borrowing some money, but later told the officers he "had lied" when he made that statement.

After Richardson testified, Barrier was recalled for further cross-examination by the defense. Thereupon, defendant announced that he rested.

The State then called as a witness one Brenda Leasor who testified that on 17 June 1971 defendant had told her "they knew where some money was and they were going to get it"; that on. Friday, 25 June 1971, he told her "they had done the job"; that he had to shoot "the old Negro woman" because "Phillip [Scearcy] had called his name and that Phillip said he would have to shoot her or she would be able to identify them." The State then recalled Richardson who testified that statements made to him by Brenda Leasor on 1 July 1971 were in substantial accord with her testimony at trial.

After this testimony by Richardson, the State rested, and no further evidence was offered by defendant.

The jury returned a verdict of guilty of murder in the second degree. Thereupon, the court pronounced judgment which imposed a prison sentence of thirty (30) years, subject to credit for time in jail pending trial.

Pursuant to its writ of *certiorari,* the Court of Appeals reviewed the superior court trial as upon (belated) appeal. Upon such review, it found no prejudicial error.

*Attorney General Robert Morgan and Assistant Attorney General Richard N. League for the State.*

*Smith, Carrington, Patterson, Follin & Curtis by J. David James for defendant appellant.*

BOBBITT, Chief Justice.

The court admitted, over defendant's objection and motion to strike, the following portion of the testimony of Barrier:

"Q. Did you at any time talk with the witness Elaine Crisco in the presence of the defendant, J. C. Castor?

"A. Yes, sir, I did. This was on July 8, 1971.

"Q. I ask you first what the witness Elaine Crisco said to and in the presence of J. C. Castor?

"A. Miss Crisco was asked several questions in the presence of J. C. Castor, the first one was 'Who went with you to Miss Walker's home,' and she replied that Phillip Scearcy and J. C. Castor went there with her. She was also asked who was in the house when she heard the shot fired, and she stated that J. C. Castor was. We asked her why they went to Miss Walker's house, and she stated for the purpose of robbing the old woman.

"Q. Were these questions asked and answered in the presence of J. C. Castor?

"A. Yes, they were.

"Q. Did he make any denial?

"A. No, sir, he did not."

Defendant assigns as error the admission of this testimony and the instruction in the court's charge with reference thereto, to wit:

"Evidence had [sic] been received which tends to show that a statement accusing the defendant of the crime charged in this case was made in his presence and the defendant neither denied or objected to the statement. This evidence should be considered by you with great caution [sic] before you may consider the defendant's silence on this as evidence of his guilt, you must find first that the defendant—that the statement was in fact made in the hearing of the defendant, second, that he understood it and that it contained an accusation against him and third, that all the circumstances including the content of the statement and the identity of the person making it in the other person's presence was sufficient to make a reply natural and proper and fourth, that the defendant had an opportunity to reply. Unless you find all these things to be present you must completely disregard this evidence. If you find all these things to be present you may consider the defendant's silence together with all other facts and circumstances in this case in determining the defendant's guilt or innocence."

Ordinarily, whether the defendant's failure to deny an accusatory statement made in his presence may be considered an implied admission of the truth thereof is to be determined by legal principles established by decisions of this Court reviewed

in *State v. Temple,* 240 N.C. 738, 83 S.E. 2d 792 (1954), and in *State v. Guffey,* 261 N.C. 322, 134 S.E. 2d 619 (1964). *See* 2 Stansbury's North Carolina Evidence, Brandis Rev., § 179.

"[A]n admission or confession, even where it may be implied by silence, must be voluntary. Any circumstance indicating coercion or lack of voluntariness renders the admission incompetent." *State v. Guffey, supra,* at 324, 134 S.E. 2d at 621.

In *State v. Dills,* 208 N.C. 313, 180 S.E. 571 (1935), the appellants, when under arrest upon a charge of murder, were forced by officers to hear read affidavits of codefendants which accused them of complicity in the crime. The State contended the appellants' silence when confronted by these accusations constituted an implied admission that the accusations were true. Rejecting this contention, the Court awarded a new trial for error in admitting this evidence. It was held that the circumstances disclosed coercion and lack of voluntariness. The following excerpt from the opinion of Justice Schenck is pertinent to the present case: "[I]f the accusations were true, the appellants had one of three courses to pursue, either admit their truth and thereby admit their own guilt, or deny them and thereby make false statements, or remain silent. We think in remaining silent the appellants acted within their legal rights, since no man should be forced to incriminate himself, or to make false statements to avoid doing so." *Id.* at 315, 180 S.E. at 572.

In *State v. Virgil,* 263 N.C. 73, 138 S.E. 2d 777 (1964), the defendant, under arrest for burglary, was taken by an officer to the hospital room of one Evans. The officer testified that the defendant failed to deny incriminating statements made by Evans in defendant's presence. Under these circumstances, it was held that defendant's silence did not constitute an implied admission of the truth of the incriminating statements, and that the officer's testimony as to Evans's statements (declarations) was incompetent and the admission thereof was prejudicial error.

In *State v. Fuller,* 270 N.C. 710, 155 S.E. 2d 286 (1967), the court admitted over objection the testimony of an officer with reference to incriminating statements made by the defendant when in custody charged with murder. The testimony disclosed that the statements attributed to the defendant were made after officers confronted him with a State's witness who made accusatory statements in the defendant's presence. The court's

findings after a *voir dire* hearing included a finding that "he [the defendant] was advised by the officers that anything he said or did not say in response to anything said by Margaret Campbell could be used for or against him." This Court, in an opinion by Justice Pless, noted the holding in *Miranda v. Arizona,* 384 U.S. 436, 444, 16 L.Ed. 2d 694, 707, 86 S.Ct. 1602, 1612 (1966), that, prior to any questioning, a person in the custody of law enforcement officers must be warned. *inter alia* "that he has a right to remain silent, that any statement he does make may be used as evidence against him. . . . " The defendant was awarded a new trial on the ground the admission of his incriminating statements after he had been advised "that anything he said or *did not say* in response to anything said by Margaret Campbell *could be used for or against him,"* (our italics) violated defendant's constitutional privilege against self-incrimination under the Fifth Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, *Malloy v. Hogan,* 378 U.S. 1, 12 L.Ed. 2d 653, 84 S.Ct. 1469 (1964), and Article I, Section 11 (now Section 23), of the Constitution of North Carolina.

Defendant was in custody, charged with the murder of Pearl Walker, when Elaine was brought into his presence and questioned concerning what she had previously related to Barrier in the absence of defendant. Defendant was not then represented by counsel and had not been advised of his constitutional rights. However, decision is not based on either of these circumstances. The crucial fact is that he exercised his constitutional right to remain silent.

The constitutional right against self-incrimination which defendant exercised by remaining silent when Elaine made accusatory statements when questioned by Barrier in defendant's presence is the same constitutional privilege against self-incrimination he exercised at trial when he did not testify after Elaine had testified to substantially the same effect. Adverse comments on a defendant's failure to testify at trial are impermissible under North Carolina law, Constitution of North Carolina, Article I, Section 23, N.C.G.S. § 8-54, and under the Fifth and Fourteenth Amendments to the Constitution of the United States, *Griffin v. California,* 380 U.S. 609, 14 L.Ed. 2d 106, 85 S.Ct. 1229 (1965). *A fortiori,* a defendant's failure to testify may not be considered an admission of the truth of testimony which tends to incriminate him. Similarly, under the circum-

stances disclosed by the evidence herein, defendant's silence in the rightful exercise of his privilege against self-incrimination may not be considered an admission of the truth of incriminating statements made in defendant's presence by a prospective State's witness in response to an officer's questions.

The Court of Appeals held that error in the admission of the challenged testimony and in the court's instruction with reference thereto was harmless beyond a reasonable doubt and therefore defendant was not "sufficiently prejudiced" to warrant a new trial. This conclusion is based upon its application of the doctrine stated by Justice Huskins in *State v. Taylor,* 280 N.C. 273, 280, 185 S.E. 2d 677, 682 (1972), as follows:

"Every violation of a constitutional right is not prejudicial. Some constitutional errors are deemed harmless in the setting of a particular case, not requiring the automatic reversal of a conviction, where the appellate court can declare a belief that it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824, 24 A.L.R. 3d 1065 (1967) ; *Harrington v. California,* 395 U.S. 250, 23 L.Ed. 2d 284, 89 S.Ct. 1726 (1969). Unless there is a reasonable possibility that the evidence complained of might have contributed to the conviction, its admission is harmless. *Fahy v. Connecticut,* 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963)."

Although our conclusion differs from that of the Court of Appeals, nothing stated herein should be interpreted as a departure from the quoted statement.

The fact that, exclusive of the erroneously admitted evidence, there was plenary evidence to support the verdict is not determinative. The test is whether, in the setting of this case, we can declare a belief that the erroneously admitted evidence was harmless beyond a reasonable doubt, that is, that there is no reasonable possibility the admission thereof might have contributed to the conviction.

The statements of Elaine when questioned by Barrier in defendant's presence do not relate to incidental or peripheral features of the case. On the contrary, the facts related therein, if true, were sufficient to establish that defendant was the person who committed the crime charged in the indictment. If considered an admission of the truthfulness of these statements, defendant's silence would be the equivalent of a confession of guilt. Under these circumstances, it seems probable the chal-

lenged evidence contributed substantially to the conviction of defendant. Certainly we cannot say there is no reasonable possibility that it contributed significantly to defendant's conviction. Hence, the erroneous admission of this evidence was prejudicial, *not* harmless beyond a reasonable doubt.

For error in admitting the challenged testimony and in the instruction with reference thereto, defendant is entitled to a new trial. Accordingly, we reverse the decision of the Court of Appeals and vacate the verdict and judgment of the superior court. The cause is remanded to the Court of Appeals with direction that it be remanded to the Superior Court of Cabarrus County for a new trial.

Reversed and remanded.

Justice HUSKINS dissenting.

When a defendant is in custody under circumstances requiring the custodial officers to advise him of his constitutional rights as mandated in *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), evidence of silence as an admission of guilt is clearly inadmissible. I regard decisions of this Court on "in-custody silence" prior to *Miranda* as no longer authoritative. I therefore fully agree with the majority opinion that the challenged testimony in this case was erroneously admitted. Even so, I share the conclusion reached by the Court of Appeals that its admission was harmless beyond a reasonable doubt.

In the evidentiary setting of this case, I see no reasonable possibility that the evidence complained of might have contributed to defendant's conviction. Edith Elaine Crisco testified from the witness stand that she was with defendant and one Phillip Scearcy in Scearcy's car on the night Pearl Walker was murdered; that she parked the car on a road near the victim's house and defendant left the car and entered the house carrying a sawed-off shotgun; that she heard a woman say, "Lord, have mercy on me," and shortly thereafter heard a shotgun blast; that defendant came out of the house with the sawed-off shotgun, and reentered the car with her and Scearcy. The pathologist who examined the body of Pearl Walker approximately twelve hours later removed pellets and wadding from a shotgun wound in the victim's neck. It is undenied that a shotgun wound was the cause of death.

Brenda Leasor testified from the witness stand that one week before the murder defendant told her "they knew where some money was and they were going to get it"; that on the day following the murder defendant told her "they had done the job"; that he had to shoot "the old Negro woman" because "Phillip [Scearcy] had called his name and that Phillip said he would have to shoot her or she would be able to identify them." S.B.I. Agent Richardson testified that statements made to him by Brenda Leasor in his investigation of the crime were in substantial accord with her testimony.

In the face of such damning evidence, it is unrealistic in my view to award a new trial because S.B.I. Agent Barrier was erroneously allowed to testify that he talked to Elaine Crisco in the presence of this defendant two weeks after the murder and that she made statements substantially in accord with the very things she swore at the trial and defendant made no denial but remained silent. In some cases, and this is one of them, the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the improperly admitted evidence is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improperly used evidence did not contribute to the conviction and was therefore harmless error. *Schneble v. Florida,* 405 U.S. 427, 31 L.Ed. 2d 340, 92 S.Ct. 1056 (1972); *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967); *Fahy v. Connecticut,* 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963). In my judgment, the minds of an average jury would not have found the State's case significantly less persuasive had Barrier's incompetent testimony been excluded. In the language of Mr. Justice Douglas in *Harrington v. California,* 395 U.S. 250, 23 L.Ed. 2d 284, 89 S.Ct. 1726 (1969), the evidence of guilt "is so overwhelming that unless we say that no violation of *Bruton* can constitute harmless error, we must leave this . . . conviction undisturbed." In the *Harrington* case the constitutional error consisted of the admission in evidence at Harrington's trial of a confession by a codefendant who did not testify, implicating Harrington. Since the evidence supplied through the erroneously admitted confession was merely cumulative and other evidence of Harrington's guilt was overwhelming, as here, it was held that admission of the codefendant's confession was harmless beyond a reasonable doubt. To like effect is *Milton v. Wainwright,* 407 U.S. 371, 33 L.Ed. 2d 1, 92 S.Ct. 2174 (1974).

Consistent decisions of this Court, holding that admission of technically incompetent evidence is harmless unless it is made to appear that defendant was prejudiced thereby and that a different result likely would have ensued had the evidence been excluded, include *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677 (1972) ; *State v. Barbour,* 278 N.C. 449, 180 S.E. 2d 115 (1971) ; *State v. Swaney,* 277 N.C. 602, 178 S.E. 2d 399 (1971) ; *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969). "Verdicts and judgments are not to be lightly set aside, nor for any improper ruling which did not materially and adversely affect the result of the trial." *State v. Bovender,* 233 N.C. 683, 65 S.E. 2d 323 (1951).

Every defendant is "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 97 L.Ed. 593, 73 S.Ct. 481 (1953). I think this defendant had a fair trial and that the error complained of was harmless. The verdict itself is some evidence of that fact since, notwithstanding the overwhelming evidence of first degree murder, he was only convicted of murder in the second degree. I vote to uphold the verdict and judgment and respectfully dissent from the majority opinion awarding a new trial.