STATE OF NORTH CAROLINA v. RODNEY LEE MOORE

No. 524PA11

(Filed 14 June 2012)

**1. Constitutional Law— right to remain silent—officer's testimony of defendant's exercise of his right—plain error review**

The Court of Appeals properly concluded in a misdemeanor sexual battery case that there was no plain error when a State's witness testified that defendant exercised his right to remain silent. The prosecutor did not emphasize, capitalize on, or directly elicit the officer's prohibited responses; the prosecutor did not cross-examine defendant about his silence; the jury heard the testimony of all witnesses, including defendant; and the evidence against defendant was substantial and corroborated by the witnesses.

**2. Constitutional Law— right to remain silent—officer's testimony of defendant's pre-arrest silence**

There was no error in a misdemeanor sexual battery case in the admission of an officer's testimony regarding defendant's alleged pre-arrest silence. The prosecutor's questions established the scope of defendant's voluntary conversation with the officer. Further, the officer's testimony did not imply any refusal to speak from which any adverse inference of guilt could arise.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, —— N.C. App. ——, 718 S.E.2d 423 (2011), finding no error in defendant's trial that resulted in a judgment entered on 23 September 2009 by Judge J.B. Allen, Jr. in Superior Court, Alamance County, but vacating the trial court's order requiring that defendant register as a sex offender and remanding the case for a new sentencing hearing. Heard in the Supreme Court on 8 May 2012.

*Roy Cooper, Attorney General, by Caroline Farmer, Deputy Director, N.C. Department of Justice, for the State.*

*Staples S. Hughes, Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Chief Justice.

**STATE v. MOORE**

[366 N.C. 100 (2012)]

The issue in this case is whether the Court of Appeals erred by holding no plain error when a State's witness testified that defendant exercised his right to remain silent. For the reasons stated herein, we affirm the decision of the Court of Appeals.

Defendant, then forty-two years old, was charged in an arrest warrant on 2 February 2009 with committing a misdemeanor sexual battery under N.C.G.S. § 14-27.5A(a). T.B., the victim, was sixteen years old at the time.[1] Defendant was tried and found guilty in district court and appealed to superior court, where a jury found him guilty. Defendant was sentenced to one hundred fifty days' imprisonment and ordered to register as a sex offender for thirty years after his release from prison.

The evidence at trial tended to show the following. In 2009, defendant frequently visited his sister, Tanya Farrish, at her house in Burlington. Tanya had a teenage son named Terrance and was related through marriage to T.B.'s mother, Teia. T.B. and Terrance were cousins, good friends, and the same age, went to the same high school, and regularly spent time at each other's houses.

After school on 2 February 2009, T.B. went to the Farrish house with Terrance and began watching television in Terrance's bedroom. Terrance's bedroom was located directly across a narrow hallway from the living room and had a door that would not fully close or lock. No one else was at home. Sometime later that afternoon, Tanya Farrish, defendant, and three other adults came to the Farrish house and started watching television in the living room.

T.B. continued to watch television alone in Terrance's bedroom while Terrance performed chores in the kitchen. T.B. testified that defendant entered Terrance's bedroom, said "I heard that you wanted me," pushed her down on the bed, and got on top of her in a straddling position. According to T.B., defendant used one hand to hold T.B.'s hands behind her head, used his other hand to feel up and down her clothed body, including her breasts and "private area," and pressed his pelvis up against T.B.'s so that she could feel his penis through his jeans. T.B. struggled and pleaded with him to get off her. Defendant left T.B. alone upon hearing someone at the front door. She testified that the attack lasted approximately two to three minutes, but could have been shorter, and that defendant left the Farrish house immediately. T.B. smelled a strong odor of alcohol on defendant's breath.

---

1. A pseudonym is used to protect the identity of the minor victim.

T.B. testified that after defendant left, she got off the bed, went outside, and telephoned a friend for a ride home. T.B. told Terrance what had happened; Terrance texted T.B.'s mother about the incident. T.B. discussed the assault with her mother later that evening. When T.B.'s mother attempted to speak with defendant on the telephone, he hung up on her. Terrance and his mother, who also learned of the incident from T.B. and her mother, called defendant on the telephone and asked him why he assaulted T.B. Defendant denied the allegations. T.B. and her mother then went to the Burlington police station and spoke with Officer Doug Murphy.

The State called Officer Murphy to testify at trial as part of the State's case-in-chief. He testified that T.B. told him that defendant had thrown her down on the bed and "rubbed" her clothed body earlier that evening. Later, at about 8:45 p.m., defendant voluntarily came to the police station at another officer's request. Defendant was told that he was not under arrest and that he could leave at any time. Defendant denied assaulting T.B. and said that he went into Terrance's bedroom because Terrance had told him T.B. wanted marijuana from defendant. The prosecutor asked Officer Murphy if defendant told him "anything else about [defendant's] allegations that [T.B.] had asked for marijuana at the time, anymore, did [defendant] elaborate anymore on that?" Officer Murphy answered, "[N]o." Officer Murphy testified that he smelled alcohol on defendant's breath. After approximately twenty minutes, Officer Murphy released defendant.

At about 11:00 p.m. that same evening, Officer Murphy went to defendant's house, arrested him, and then read him his *Miranda* rights. Defendant exercised his constitutional right to silence by refusing to speak to Officer Murphy.

At trial, during the State's direct examination, Officer Murphy testified about defendant's arrest as follows:

Q. And did you arrest [defendant] thereafter?

A. Yes. I went to [defendant's] residence . . . and I took him into custody. Once he was in custody, I read him his Miranda Rights, but he refused to talk about the case at that time.

Q. Have you ever spoken to the defendant or any of the other parties in this case since that time?

A. No, I have not.

STATE v. MOORE

[366 N.C. 100 (2012)]

Defendant's evidence tended to show the following. Terrance Farrish testified that on the date in question, T.B. told him "to tell [defendant] to come" into the bedroom to see her. Terrance then relayed the message to defendant. When defendant walked into the bedroom to see what T.B. wanted, Terrance sat down in a chair in the living room near the door to his bedroom. Terrance testified that defendant was in the bedroom for "six seconds, at the most," and then came out of the bedroom, went into the living room, said, "I ain't buying that girl no blunt," and sat down.

Tanya Farrish testified that defendant went into Terrance's bedroom after being asked to do so. Tanya was sitting in the living room and could see the back of defendant's pants leg through the crack in the door while he was in the bedroom. Tanya never saw defendant get far from the doorway, but she did not watch him the entire time he was in the bedroom. Tanya testified that defendant was in the bedroom "less than a minute" and upon emerging from the bedroom said that T.B. "wanted for him to buy her a blunt."

Defendant testified on his own behalf. He acknowledged that he was at the Farrish house on 2 February and testified that Terrance told him that T.B. wanted to see him in the bedroom. Defendant testified that he entered the bedroom, stood at the doorway, and asked T.B., "[W]hat did she want?" Defendant declared that T.B. asked for money to buy a blunt, but he refused, left the room, and told the adults in the living room, "I'm not going to buy her a blunt." Defendant testified that the entire encounter lasted ten seconds at the most.

After his conviction defendant gave timely notice of appeal to the Court of Appeals. On appeal, defendant argued several issues, including that the trial court committed plain error by admitting Officer Murphy's testimony referring to defendant's exercise of his right to remain silent and that the trial court erroneously ordered thirty years of sex offender registration upon defendant's release from imprisonment.

The Court of Appeals found either no error or no reversible error on all issues relevant to the determination of guilt, but it vacated the trial court's order requiring defendant to register as a sex offender and remanded for a new sentencing hearing. *State v. Moore,* —— N.C. App. ——, 718 S.E.2d 423, 2011 WL 5148671, at *4, *6, *8-9, *11 (2011). The court below recognized that the right to remain silent is protected by the Fifth Amendment and is incorporated by the Fourteenth Amendment. *Moore,* 2011 WL 5148671, at *7 (citing *State*

STATE v. MOORE

[366 N.C. 100 (2012)]

*v. Ward*, 354 N.C. 231, 250, 555 S.E.2d 251, 264 (2001)). The Court of Appeals also recognized that "[a] defendant's post-arrest, post-*Miranda* warnings silence may not be used for any purpose." *Id.* (citing, *inter alia, Doyle v. Ohio*, 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98 (1976)). The court then analogized to *State v. Mendoza*, 206 N.C. App. 391, 698 S.E.2d 170 (2010) (concluding that the State's questioning about the defendant's silence did not rise to the level of plain error) in determining that admission of Officer Murphy's statements was not plain error. 2011 WL 5148671, at *7-8. The Court of Appeals reasoned that since the error in the instant case was less prejudicial than the error in *Mendoza*, the error here also did not amount to plain error. *Id.* The Court of Appeals noted distinguishing factors rendering the inappropriately admitted evidence in this case less susceptible to a finding of plain error than the error committed in *Mendoza. Id.*

[1] Before this Court defendant argues that the admission as substantive evidence of Officer Murphy's testimony referring to defendant's post-*Miranda* exercise of his constitutional right to remain silent was plain error entitling defendant to a new trial. We agree that admission of the post-*Miranda* testimony was error, but we disagree that this error amounted to plain error.

A criminal defendant's right to remain silent is guaranteed under the Fifth Amendment to the United States Constitution and is made applicable to the states by the Fourteenth Amendment. *Ward*, 354 N.C. at 250, 555 S.E.2d at 264 (citing *Griffin v. California*, 380 U.S. 609, 14 L. Ed. 2d 106 (1965)). "We have consistently held that the State may not introduce evidence that a defendant exercised his [F]ifth [A]mendment right to remain silent." *State v. Ladd*, 308 N.C. 272, 283, 302 S.E.2d 164, 171 (1983) (citing *State v. McCall*, 286 N.C. 472, 212 S.E.2d 132 (1975), and *State v. Castor*, 285 N.C. 286, 204 S.E.2d 848 (1974)). If a defendant has been given his *Miranda* warnings, "his silence may not be used against him." *McCall*, 286 N.C. at 484, 212 S.E.2d at 139 (citing *State v. Fuller*, 270 N.C. 710, 155 S.E.2d 286 (1967), and *State v. Moore*, 262 N.C. 431, 437, 137 S.E.2d 812, 816 (1964)) (concluding that the trial court erred in admitting a law enforcement officer's testimony that the defendant exercised his right to remain silent and ordering a new trial). The rationale underlying this rule is that "[t]he value of constitutional privileges is largely destroyed if persons can be penalized for relying on them." *Grunewald v. United States*, 353 U.S. 391, 425, 1 L. Ed. 2d 931, 955 (1957) (Black, J., Warren, C.J., Douglas & Brennan, JJ., concurring).

On direct examination Officer Murphy testified that after he read defendant his *Miranda* rights, defendant "refused to talk about the case at that time." Officer Murphy further answered that he had not spoken to "defendant or any of the other parties in this case since that time." This testimony referred to defendant's exercise of his right to silence, and its admission by the trial judge was error.

Noting that the comments on defendant's exercise of his right to remain silent were not made by the prosecutor, nor were they the result of a question by the prosecutor designed to elicit a comment on defendant's exercise of his right to silence, the State argues that the admission of the post-*Miranda* statements was not error. We disagree. Except in certain limited circumstances, "any comment upon the exercise of [the right to remain silent], nothing else appearing, [is] impermissible." *State v. Lane*, 301 N.C. 382, 384, 271 S.E.2d 273, 275 (1980) (citing *Castor*, 285 N.C. 286, 204 S.E.2d 848) (noting that there is an exception for impeachment by prior inconsistent statements). An improper adverse inference of guilt from a defendant's exercise of his right to remain silent cannot be made, regardless of who comments on it. *See, e.g., United States v. Patterson*, 819 F.2d 1495, 1506 (9th Cir. 1987) (stating that it was improper for a codefendant's attorney to comment on the defendant's exercise of a Fifth Amendment right); *Payne v. State*, 355 S.C. 642, 645, 586 S.E.2d 857, 859 (2003) ("[A] co-defendant's counsel is held to the same standard because the importance of this protection is [to prevent] the effect [that] an indirect reference may have upon the jury regardless of whose counsel made the reference."). The Fifth Amendment "must be accorded liberal construction in favor of the right it was intended to secure." *Hoffman v. United States*, 341 U.S. 479, 486, 95 L. Ed. 1118, 1124 (1951) (citing *Counselman v. Hitchcock*, 142 U.S. 547, 562, 35 L. Ed. 1110, 1114 (1892), *superseded by statute*, Compulsory Testimony Act of 1893, Act of Feb. 11, 1893, 27 Stat. 443, 49 U.S.C. § 46, *as recognized in Kastigar v. United States*, 406 U.S. 441, 32 L. Ed. 2d 212 (1972), and *Arndstein v. McCarthy*, 254 U.S. 71, 72-73, 65 L. Ed. 138, 142 (1920)). Consideration of the way in which the evidence was presented or the prosecutor's use of the evidence is relevant to whether admission of the testimony at issue constituted plain error, but not to the threshold question of whether admission of the testimony was error.

Having determined that admission of the evidence was error, we turn to defendant's next argument that he is entitled to a new trial on account of the erroneously admitted testimony. Again we disagree. When, as in this case, a defendant fails to object to the admission of

the testimony at trial, we review only for plain error. N.C. R. App. P. 10(a)(4) ("In criminal cases, an issue that was not preserved by objection . . . may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error."); *State v. Lawrence*, —— N.C. ——, ——, 723 S.E.2d 326, 333 (2012) (citing *State v. Melvin*, 364 N.C. 589, 593-94, 707 S.E.2d 629, 632-33 (2010)); *State v. Odom*, 307 N.C. 655, 659-60, 300 S.E.2d 375, 378 (1983).

Whether defendant is entitled to a new trial is to be determined by application of our plain error rule. Our plain error rule

> is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (internal quotation marks omitted) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (footnotes omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). For unpreserved evidentiary error to be plain error, the defendant has the burden to show that "after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.' " *Lawrence*, —— N.C. at ——, 723 S.E.2d at 334 (quoting *Odom*, 307 N.C. at 660, 300 S.E.2d at 378, and citing *State v. Walker*, 316 N.C. 33, 340 S.E.2d 80 (1986)).

In this case the admission of Officer Murphy's statements regarding defendant's post-*Miranda* exercise of his right to remain silent was not plain error. First, the prosecutor did not emphasize, capitalize on, or directly elicit Officer Murphy's prohibited responses. *See State v. Freeland*, 316 N.C. 13, 19-20, 340 S.E.2d 35, 38-39 (1986) (holding that the absence of an attempt by the prosecutor to directly elicit testimony or capitalize on the defendant's exercise of his Fifth Amendment rights weighed in favor of holding the error to be harmless). Officer Murphy's first statement regarding defendant's exercise of his rights was in response to the prosecutor's inquiry into whether

he arrested defendant after obtaining an arrest warrant from the magistrate. The prosecutor's question requested only a "yes" or "no" response. Officer Murphy's second statement came after an inquiry into whether he spoke to defendant or any party involved in the case after the arrest. While the wording of the question could be construed to be a reference to defendant's continued silence, the question appears likely to have been intended to establish the timeline of events and the extent of Officer Murphy's involvement in the case. In either event, the prosecutor did not emphasize or highlight defendant's exercise of his rights. Moreover, the prosecutor did not mention defendant's exercise of his rights when he cross-examined defendant or in his closing argument. That the prosecutor did not emphasize, capitalize on, or directly elicit Officer Murphy's prohibited responses militates against a finding of plain error. *See State v. Elmore*, 337 N.C. 789, 792-93, 448 S.E.2d 501, 502-03 (1994) (holding error harmless beyond a reasonable doubt where a federal agent testified that the defendant said he wanted to consult with an attorney before talking about the matter; and noting that the violation, if any, was *de minimis*, that the statement was not solicited by the prosecutor, and that the prosecutor did not cross-examine the defendant about exercising his right to remain silent, nor did he refer to the statement in closing arguments); *State v. Alexander*, 337 N.C. 182, 196, 446 S.E.2d 83, 91 (1994) (holding no plain error where the prosecutor asked a State's witness, a police officer, if the defendant spoke or talked to him, and noting that the comments were "relatively benign" and that the prosecutor did not emphasize that the defendant did not speak with law enforcement after his arrest). Here, given the brief, passing nature of the evidence in the context of the entire trial, the evidence is not likely to have " 'tilted the scales' " in the jury's determination of defend- ant's guilt or innocence. *See State v. Black*, 308 N.C. 736, 741, 303 S.E.2d 804, 807 (1983).

Second, the jury heard the testimony of all witnesses, including defendant. T.B. testified that defendant committed a sexual battery against her. Officer Murphy corroborated T.B.'s testimony, stating that T.B. did not waiver in her account in his interview with her and confirming the smell of alcohol on defendant's breath. Tanya Farrish testified that defendant was in Terrance's bedroom for less than a minute, which is not inconsistent with T.B.'s testimony that defendant was in the room with her for less than two or three minutes.

Defendant testified and told his version of events that he had stood in the doorway and that T.B. had asked him to buy marijuana

for her. However, on cross-examination the State impeached defendant's testimony on a number of matters, including how often he had seen T.B. prior to 2 February, the number and nature of his prior convictions carrying a sentence of more than sixty days, and his consumption of alcohol on the day of the alleged incident. The jury's role is to weigh evidence, assess witness credibility, assign probative value to the evidence and testimony, and determine what the evidence proves or fails to prove. *See, e.g., Koury v. Follo,* 272 N.C. 366, 372-73, 158 S.E.2d 548, 554 (1968); *Brown v. Brown,* 264 N.C. 485, 488, 141 S.E.2d 875, 877 (1965) (per curiam). On the record before this Court, the jury had reason to doubt defendant's credibility and to believe T.B.'s evidence. Substantial evidence of a defendant's guilt is a factor to be considered in determining whether the error was a fundamental error rising to plain error. *See Alexander,* 337 N.C. at 196, 446 S.E.2d at 91 (considering that the evidence against the defendant was "substantial and corroborated by a number of eyewitnesses" in the Court's determination of no plain error for a Fifth Amendment violation).

Defendant also argues that the trial court's other alleged errors "compounded the plain error here." We disagree that errors can be "compounded" under plain error review. Plain error review requires the defendant to meet a heavier burden than harmless error review, which applies when the defendant objects and properly preserves an error for appellate review. *See* N.C.G.S. § 15A-1443 (2011); *Lawrence,* —— N.C. at ——, 723 S.E.2d at 330. The purpose of the higher burden is to encourage defendants to bring errors to the trial judge's attention at the time they are made. *Cf. Odom,* 307 N.C. at 659-61, 300 S.E.2d at 378 (stating the purpose of the then-existing rule prohibiting review of certain unpreserved errors was to bring errors to the trial court's attention so that errors can be cured and new trials can be prevented). Allowing a defendant to cumulate errors when seeking plain error review undermines this purpose. We note that had defendant objected to the testimony, he would have been entitled to have it stricken and a curative instruction given by the judge. *See Freeland,* 316 N.C. at 19-20, 340 S.E.2d at 38-39 (discussing with approval the use of a cautionary instruction under remarkably similar circumstances); *McCall,* 286 N.C. at 487, 212 S.E.2d at 141 (stating that this Court has previously held that upon an improper comment on defendant's failure to testify, "the error may be cured by a withdrawal of the remark or by a statement from the court that it was improper, followed by an instruction to the jury not to consider the" accused's exercise of his Fifth Amendment rights).

In sum, the erroneous admission of Officer Murphy's testimony was not plain error. The prosecutor did not emphasize, capitalize on, or directly elicit Officer Murphy's prohibited responses; the prosecutor did not cross-examine defendant about his silence; the jury heard the testimony of all witnesses, including defendant; and the evidence against defendant was substantial and corroborated by the witnesses. For the above reasons, we hold that defendant has not carried his burden, and the admission of Officer Murphy's testimony referring to defendant's post-*Miranda* exercise of his right to remain silent, although error, was not plain error. Thus, defendant is not entitled to a new trial on this basis.

[2] Defendant also assigns error to the admission of Officer Murphy's testimony regarding defendant's alleged pre-arrest silence. According to defendant, Officer Murphy testified that defendant did not "tell [him] anything else about" and did not "elaborate anymore on" what happened on 2 February. However, when Officer Murphy's testimony is viewed in the proper context, it becomes apparent that he did not refer to any refusal to speak by defendant. The voluntary conversation referenced by Officer Murphy occurred after defendant willingly agreed to speak with law enforcement at the police station, which was approximately two hours before his arrest. Officer Murphy testified that as part of this conversation, defendant alleged that T.B. had asked him for marijuana. The prosecutor then asked Officer Murphy if defendant said "anything else about" or "elaborate[d] anymore on" those allegations. Officer Murphy responded, "No." The prosecutor's questions established the scope of defendant's voluntary conversation with Officer Murphy. Officer Murphy's testimony did not imply any refusal to speak from which any adverse inference of guilt could arise. Therefore, the admission of Officer Murphy's testimony regarding defendant's pre-arrest testimony was not error.

For the reasons stated herein, we affirm the decision of the Court of Appeals.

AFFIRMED.