STATE OF NORTH CAROLINA v. ADOLPHUS LANE

No. 7921SC1056

(Filed 6 May 1980)

**Criminal Law § 48.1— in-custody silence about alibi—cross-examination at trial—absence of Miranda warnings**

> Where an arrestee is the focus of suspicion, has been held in custody for a significant period of time without being advised of his *Miranda* rights, is aware of his right to remain silent, and makes it clear that he is relying on his right to remain silent, his in-custody silence concerning an alibi about which he testified at trial cannot be the subject of cross-examination.

> Judge WEBB dissenting.

APPEAL by defendant from *Hairston, Judge.* Judgment entered 19 July 1979 in Superior Court, FORSYTH County. Heard in the Court of Appeals 26 March 1980.

Defendant was arrested on 25 April 1979 and indicted for possession with intent to sell heroin and for the sale of heroin. The indictments had been issued on 23 April 1979.

The State presented evidence which tended to show that an undercover police agent, Lee Walker, went to a lounge in Winston-Salem on the night of 4 April 1979, and at approximately 11:00 p.m., while at the lounge, purchased fifty dollars worth of heroin from defendant. Defendant's evidence tended to show that he had not been in Winston-Salem at the time of the drug transaction. Defendant testified that he and his employer were in Charlotte at the time of the transaction and that upon leaving Charlotte, had traveled to Darlington, South Carolina. The alibi was corroborated by the employer's testimony.

Defendant was convicted on both charges, and has appealed.

*Attorney General Edmisten, by Assistant Attorney General Robert R. Reilly, for the State.*

*Alexander, Hinshaw & Schiro, by C. J. Alexander II, for defendant appellant.*

HILL, Judge.

We have examined the four issues defendant has brought forth on appeal. We find one to be of merit and dispositive of this case.

Upon his arrest, defendant was taken to the Winston-Salem Police Department and brought into the Vice and Narcotics Office where Officer Gary Lloyd began reading the grand jury indictments to him. During the reading, defendant interrupted Officer Lloyd and asked him: "Well, who I supposed to have sold heroin to?" Lloyd replied, "Lee Walker," and defendant retorted, "Well, I don't know no Lee Walker." A brief conversation followed with defendant stating that he had sold heroin in the past; had served a prison sentence for selling heroin; and that he had never seen Detective Lee Walker or Officer Lloyd before the time he was arrested on the charges which are the basis for the conviction now appealed from. It was not until after Officer Lloyd finished reading the indictment and after defendant had been in custody for a significant period of time that defendant was advised of his *Miranda* rights.

State v. Lane

At trial, on direct examination, defendant testified that on 3 April 1979 he went to Charlotte with his employer to attend an automobile auction; that they returned to High Point, arriving around 11:30 p.m.; that they left for Darlington, South Carolina, soon afterwards, arriving around 3:00 a.m. on 4 April 1979; and that he stayed in Darlington until the morning of 5 April 1979.

On cross-examination, the district attorney asked defendant several questions concerning his alibi. The district attorney asked why defendant had not informed Officer Lloyd of the alibi and why he had not informed the district attorney of the alibi. Defendant's lawyer objected to the questions, was overruled and brought the objections forward in an assignment of error. We hold the court's action in overruling the objections and failing to give a curative instruction constituted prejudicial error.

Defendant relies on *Doyle v. Ohio*, 426 U.S. 610, 49 L.Ed. 2d 91, 96 S.Ct. 2240 (1976). In that case, at p. 613-14, the prosecutor asked the defendant:

Q. [Federal agent] Beamer did arrive on the scene?

A. Yes, he did.

Q. And I assume you told him all about what happened to you?

    . . . .

A. No.

Q. You didn't tell Mr. Beamer?

    . . . .

A. No.

Q. You didn't tell Mr. Beamer [your alibi]?

    . . . .

A. No, sir.

Q. [I]f that is all you had to do with this and you are innocent, when Mr. Beamer arrived on the scene, why didn't you tell him?

    . . . .

Q. But in any event you didn't bother to tell Mr. Beamer anything about this?

A. No, sir.

The defendant in *Doyle* had received the *Miranda* warnings before agent Beamer arrived on the scene. The defendant chose to exercise his right to remain silent and did not give his explanation of circumstances until his trial. The Supreme Court stated in regard to the prosecutor's questions that, ". . . it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle,* at p. 618.

Similarly, in our case, defendant Lane was asked by the prosecutor on cross-examination:

Q. [A]t the time you were telling these officers that you didn't sell to this gentleman, Mr. Lee Walker, here—

A. Yes.

Q. —Did you tell them that you had been to the sale at Charlotte . . . on the date certain?

. . . .

A. No. . . .

. . . .

Q. Did you tell them that thereafter you had went to Darlington . . .?

A. I didn't tell nothing. . . . *I wasn't going to make no statement* to him. That's what I told him. (Emphasis added.)

. . . .

Q. Did you come up and tell any of the district attorneys [about your alibi]?

. . . .

A. No.

The holding in *Doyle* seems to be based on the position that the prosecutor was asking the defendant about his silence *after* he received his *Miranda* warnings.

After an arrested person is formally advised by an officer of the law that he has a right to remain silent, the unfairness occurs when the prosecution, in the presence of the jury, is allowed to undertake impeachment on the basis of what may be the exercise of that right. *Doyle*, at 619, fn. 10.

Defendant in our case, for some unexplained reason, was not given his *Miranda* rights until after the indictments had been read to him, even though he had been in custody for a significant period of time and obviously the focus of the police department's suspicion. Defendant failed to give his alibi to the police *before* he heard his *Miranda* warning. For this reason, *Doyle* might not apply to that particular silence.

Even under a restrictive reading of *Doyle*, defendant's federal due process rights were violated. The district attorney also asked defendant why he had not approached any district attorney with his alibi. Defendant had been given his *Miranda* warnings by the time any exchange with a district attorney could have taken place. The prosecutor clearly violated defendant's due process rights when he sought to impeach defendant with regard to that particular silence.

It strikes this Court that the United States Supreme Court may be reluctant to strike down state court convictions, such as in *Doyle*, when the impeachment on cross-examination relates to a defendant's silence *before* he receives his *Miranda* warnings. For analytical purposes, the reading of the warning to an arrestee provides an easily recognizable signpost. It is clear from that point on that the arrestee *knows* he has the right to remain silent. The arrestee may not then be penalized at trial for exercising that right.

Of course, the whole reason for bringing out a defendant's silence on cross-examination is that the silence constitutes a prior "statement," inconsistent with his alibi. The reasoning is that silence in the face of accusation and possible prosecution is inconsistent with innocence, particularly where the arrestee has an alibi which he later reveals at trial.

This inconsistency, which is ambiguous at best, *see United States v. Hale*, 422 U.S. 171, 45 L.Ed. 2d 99, 95 S.Ct. 2133 (1975), vanishes altogether when a defendant's silence during the

custodial interrogation can be taken to indicate reliance on the *right* to remain silent. *Hale,* at p. 177. The right to remain silent does not arise when an arrestee is given his *Miranda* warnings. It is a right which he possesses at all times under the Fifth Amendment of the United States Constitution and under Article I, § 23 of the North Carolina Constitution. Our Supreme Court has repeatedly held that ". . . a defendant's constitutional right to remain silent while in custody precludes the admission of testimony that defendant remained silent in the face of accusations of his guilt." *State v. Williams,* 288 N.C. 680, 693, 220 S.E. 2d 558 (1975), *citing State v. Castor,* 285 N.C. 286, 204 S.E. 2d 848 (1974). *Also see State v. Fuller,* 270 N.C. 710, 714, 155 S.E. 2d 286 (1967).

In all of the above cases, it appears that the defendant had been advised of his right to remain silent. We do not interpret the cases to mean, however, that such a recitation *must* be made before defendant may rely on his right to remain silent. Such an interpretation would exalt form over substance. Therefore, despite the Supreme Court's seeming timidity to do so, we hold that where an arrestee is the focus of suspicion, has been held in custody for a significant period of time *without* being advised of his *Miranda* rights, is aware of his right to remain silent (defendant had been arrested at previous times), and makes it clear that he is relying on his right to remain silent ("I wasn't going to make no statement."), that in-custody silence cannot be the subject of cross-examination. Such questions by the prosecutor would, in this Court's view, violate defendant's right against self-incrimination guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and, in addition, *most certainly* would violate defendant's right under Article I, § 23 of the North Carolina Constitution.

For the reasons stated above, defendant must be granted a

New trial.

Judge MARTIN (Robert M.) concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

I dissent from the majority. The record discloses that while defendant was in custody and before an interrogation began, he stated to the officer that he had not sold any heroin to Lee Walker. When asked by the district attorney on cross-examination if he had told the officers of his alibi evidence, he said "I didn't tell nothing . . . . I wasn't going to make no statement to him. That's what I told him." As I read *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed. 2d 91 (1976), the thrust of that case is that if a person exercises his right to remain silent, it is an ambiguous act and cannot be used to impeach his testimony. In this case, the defendant did not exercise his right to remain silent. He told the officers before interrogation began that he did not sell to Mr. Walker. It was proper to question him as to why he did not tell the officers at that time that he had an alibi. If it was error to allow this question, the defendant cured it by his answer. He testified he told the officers he would make no statement, which he had a right to do. He was not prejudiced by letting the jury hear this testimony. I vote to affirm.