STATE OF NORTH CAROLINA v. JIHAD RASHID MELVIN

No. 382PA09

(Filed 20 December 2010)

**Homicide— instructions—first-degree murder and accessory after the fact—mutually exclusive**

> There was no plain error where the trial court should have instructed the jury that it could not convict defendant of both first-degree murder and accessory after the fact to murder, which are mutually exclusive offenses. A different result would not have been probable if the trial court had given proper instructions because the jury considered the offenses separately and convicted defendant of both, indicating an intent to hold defendant fully accountable and that it would have convicted defendant of the more serious offense had it been required to choose.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, —— N.C. App. ——, 682 S.E.2d 238 (2009), vacating a judgment entered on 4 August 2008 by Judge Charles H. Henry in Superior Court, Onslow County, and remanding the case for a new trial. Heard in the Supreme Court 11 May 2010.

*Roy Cooper, Attorney General, by Norma S. Harrell, Special Deputy Attorney General, for the State-appellant.*

*Staples S. Hughes, Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellee.*

EDMUNDS, Justice.

In this case we consider whether the trial court erred by failing to instruct the jury that it could not convict defendant of both first-degree murder and accessory after the fact to murder. Although we conclude that the trial court should have given the instruction, defendant failed timely to object to its omission. Because we find no plain error, we reverse the decision of the Court of Appeals.

On 10 July 2007, defendant was indicted for one count of first-degree murder and one count of accessory after the fact to murder. Because no evidence suggested that defendant had fired the shots that killed the victim, the first-degree murder charge against him was based on the theories of acting in concert and aiding and abetting. At

a pretrial hearing held on 22 July 2008 to consider motions filed in the case, defendant argued that the two offenses in the indictment were inconsistent and moved to have the district attorney elect the State's theory of proof or, in the alternative, for the court to sever the offenses. During the discussion of these motions, the trial court asked counsel: "[I]s the jury instructed they can only—if they were to find the defendant guilty of first-degree murder, they would not consider accessory after the fact, or do you allow them both to go and then the court arrests one judgment, as opposed to the other?" The State cited *State v. Jewell*, 104 N.C. App. 350, 409 S.E.2d 757 (1991), *aff'd per curiam*, 331 N.C. 379, 416 S.E.2d 3 (1992), to support its position that the latter course was proper, and defense counsel, "as an officer of the court," conceded that he believed the State had correctly cited the controlling case. The trial court then denied defendant's motion to sever the two offenses and determined that the State had made an election to proceed on the theory of acting in concert.

At trial, the State presented evidence that, at approximately 11:00 a.m. on 21 March 2007, defendant drove Robert Ridges (Ridges) and Tony Cole (Cole) to the home of Ridges's brother, Elijah. As Ridges, Cole, and defendant were driving away after the visit, they spotted the victim, Almario Millander. They waved the victim over to their car, and Ridges sold him a quantity of what was purported to be crack cocaine. As they attempted to leave, however, the car stalled. The victim walked over to the immobilized car, claimed Ridges had sold him counterfeit crack, and demanded his money back. When Ridges denied the accusation, the victim pulled out a sawed-off shotgun and pointed it at Ridges, who was unarmed. Defendant was able to restart the car and drive away with Ridges and Cole without shots being fired.

In the aftermath of the encounter, an angry Ridges "swore on his son" that he was going to "get" the victim. Ridges left Cole and defendant for a time, then returned. As the three later "chilled" and smoked "weed" at a friend's house, Cole realized that Ridges had obtained a gun when he saw Ridges "pull[] it out" in defendant's presence. That same evening, defendant drove as he, Ridges, and Cole looked for the victim. They came across an individual named Ken Adams, who told them the victim was at Adams's residence. Cole exhorted Ridges: "[G]o in his house, you going to kill this man, you got to kill the other guy too. Can't be no eyewitnesses."[1] Defendant agreed with Cole but Ridges responded that the victim was the only

---

1. The "other guy" apparently was Ken Adams.

one he wanted. During this discussion, defendant briefly took possession of Ridges's pistol, but Ridges retrieved it. Ridges, Cole, and defendant exited the car and walked toward Adams's residence. Defendant climbed the steps to the rear of the residence, while Ridges entered through the back door. Adams, who was inside, saw Ridges open fire on the victim. As the victim tried to escape through a window, Ridges shot him twice, hitting the victim behind one knee and inflicting a fatal wound to the victim's chest.

Defendant then drove Ridges and Cole from the scene. They stopped at a gas station, where Cole and Ridges made purchases while defendant waited in the car. After they left, a law enforcement officer attempted to stop defendant's car using his blue lights and siren. Defendant turned onto a dirt road and accelerated, raising a cloud of dust that caused the pursuing officer to drop back. The car stalled again, so defendant pulled to the side of the road, and he, Ridges, and Cole fled into nearby woods. The officer, who was acting on information indicating only that the vehicle's registration was faulty, stopped at the abandoned car, but, unable to find the occupants and seeing no evidence of a crime, left after a short wait.

Once the officer departed, defendant, Ridges, and Cole returned to the car, wiped it down to remove fingerprints, and attempted to set it on fire. They then dismantled the murder weapon and wiped all fingerprints off the pieces. They caught a ride, and, as they were driven to the home of the mother of defendant's child, each of the three threw components of the dismantled pistol from the car. Parts of the weapon were recovered during the investigation and identified by State Bureau of Investigation agent Jessica Rosenberry as belonging to the gun used to shoot the victim.

Defendant was convicted by a jury of both first-degree murder and accessory after the fact to murder. The trial court arrested judgment on the conviction of accessory after the fact but sentenced defendant to life imprisonment without parole for the first-degree murder conviction. On appeal, the Court of Appeals concluded that the trial court committed plain error by failing to instruct the jury that it could convict defendant of either charge, but not both. —— N.C. App. at ——, 682 S.E.2d at 246. Accordingly, the Court of Appeals vacated the judgment and ordered a new trial. This Court allowed the State's petition for discretionary review.

We begin by defining the pertinent doctrines. "First-degree murder is the intentional and unlawful killing of a human being with mal-

ice and with premeditation and deliberation." *State v. Thomas*, 350 N.C. 315, 346, 514 S.E.2d 486, 505 (citation omitted), *cert. denied*, 528 U.S. 1006, 145 L. Ed. 2d 388 (1999); *see also* N.C.G.S. § 14-17 (2009). The doctrine of acting in concert provides that "when two or more persons act together in pursuance of a common plan or purpose, each is guilty of any crime committed by any other in pursuance of the common plan or purpose." *State v. Thomas*, 325 N.C. 583, 595, 386 S.E.2d 555, 561 (1989). Specifically, acting in concert "allows a defendant acting with another person for a common purpose of committing some crime to be held guilty of a murder committed in the pursuit of that common plan even though the defendant did not personally commit the murder." *State v. Roache*, 358 N.C. 243, 306, 595 S.E.2d 381, 421 (2004) (citation omitted). A defendant is guilty of aiding and abetting another in the commission of an offense if:

> (i) the crime was committed by some other person; (ii) the defendant knowingly advised, instigated, encouraged, procured, or aided the other person to commit that crime; and (iii) the defendant's actions or statements caused or contributed to the commission of the crime by that other person.

*State v. Goode*, 350 N.C. 247, 260, 512 S.E.2d 414, 422 (1999) (citation omitted). We have observed that "[t]he distinction between aiding and abetting and acting in concert, however, is of little significance. [Defendants convicted under either doctrine] are equally guilty and are equally punishable." *State v. Williams*, 299 N.C. 652, 656, 263 S.E.2d 774, 777 (1980) (internal citations omitted). On the other hand, "[a]n accessory after the fact is one who, knowing that a felony has been committed by another, receives, relieves, comforts or assists such felon, or who in any manner aids him to escape arrest or punishment." *State v. Oliver*, 302 N.C. 28, 55, 274 S.E.2d 183, 200 (1981) (citations omitted).

Murder and accessory after the fact to that murder are mutually exclusive offenses. *See State v. McIntosh*, 260 N.C. 749, 753, 133 S.E.2d 652, 655 (1963) ("A participant in a felony may no more be an accessory after the fact than one who commits larceny may be guilty of receiving the goods which he himself had stolen."), *cert. denied*, 377 U.S. 939, 12 L. Ed. 2d 302 (1964); *see also State v. Jewell*, 104 N.C. App. at 353, 409 S.E.2d at 759 (finding that murder and accessory after the fact to murder are mutually exclusive offenses). In addition, verdicts of guilty of both offenses would be both legally inconsistent and contradictory. *See State v. Mumford*, 364 N.C. 394, 398-402, 699

STATE v. MELVIN

[364 N.C. 589 (2010)]

S.E.2d 911, 914-16 (2010) (reviewing the distinction between verdicts that are "merely inconsistent" and those that are "legally inconsistent and contradictory"). Accordingly, a defendant cannot be convicted of both offenses arising from a single killing.

Nevertheless, the State may join for trial two offenses when they "are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan," N.C.G.S. § 15A-926(a) (2009), even if the defendant cannot be convicted of both offenses "due to the mutually exclusive nature of those offenses," *State v. Speckman*, 326 N.C. 576, 578, 391 S.E.2d 165, 167 (1990) (citation omitted). When two such offenses are joined for trial and substantial evidence supports each offense, both should be submitted to the jury. *See id.* at 579, 391 S.E.2d at 167. "[H]owever, the trial court must instruct the jury that it may convict the defendant only of one of the offenses or the other, but not of both." *Id.* Because no such instruction was given here, the trial court erred.

Accordingly, we must now consider whether the error was prejudicial. During the charge conference conducted after the presentation of evidence and closing arguments, counsel and the trial judge discussed instructions on acting in concert, aiding and abetting, and accessory after the fact. Although defendant objected to other instructions, he neither requested an instruction that the jury could not convict of both first-degree murder and accessory after the fact nor objected to the absence of such an instruction. *See* N.C. R. App. P. 10(b)(2) (2008). When a party does not object to an omission from the jury charge despite having the opportunity to do so, we review for plain error. *See id.* 10(b)(4) (2008); *State v. Jones*, 355 N.C. 117, 125, 558 S.E.2d 97, 102-03 (2002).[2]

In reviewing for plain error, this Court has stated that:

"[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire

---

2. While defendant contends in a footnote to his brief that the error should be considered preserved because he objected repeatedly to joinder of the two offenses for trial, the issue of joinder *vel non* is entirely separate from issues pertaining to the correct jury instructions for two offenses that have been joined. In addition, because we conclude no plain error occurred here, we elect not to address the State's argument that defendant invited the error. *See State v. Rouse*, 339 N.C. 59, 81, 451 S.E.2d 543, 555 (1994) (finding no plain error in excluding evidence even though any error arguably had been invited), *cert. denied*, 516 U.S. 832, 133 L. Ed. 2d 60 (1995), *overruled in part on other grounds by State v. Hurst*, 360 N.C. 181, 199, 624 S.E.2d 309, 323, *cert. denied*, 549 U.S. 875, 166 L. Ed. 2d 131 (2006).

record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (internal quotation marks omitted) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) (alternations in original), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Id.* at 661, 300 S.E.2d at 378 (quotation marks omitted) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977)).

Defendant bears the burden of showing that an error rose to the level of plain error. *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997). This burden is "much heavier . . . than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection. This is so in part at least because the defendant could have prevented any error by making a timely objection." *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986). In conducting plain error review, we normally examine the entire record to determine whether the error "had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 661, 300 S.E.2d at 378-79 (citation omitted). Because the error here led to mutually exclusive verdicts of guilty, we conduct the same review to determine whether the error had a probable effect on the outcome of the trial. *See, e.g., State v. Nicholson*, 355 N.C. 1, 50, 558 S.E.2d 109, 142 (declining to "conclude a different result would have been probable even if the trial court had explicitly specified the evidence the jurors were to consider" pertaining to an aggravating circumstance), *cert. denied*, 537 U.S. 845, 154 L. Ed. 2d 71 (2002); *State v. Abraham*, 338 N.C. 315, 347, 451 S.E.2d 131, 148 (1994) (concluding trial court did not commit plain error when erroneous jury instruction "had no effect on the outcome of the trial"). Our review of the whole record reveals no plain error requiring a new trial.

STATE v. MELVIN

[364 N.C. 589 (2010)]

Defendant was convicted by the jury of first-degree murder and accessory after the fact. The evidence presented at trial showed that defendant was present at the original confrontation, heard Ridges swear "on his son" that he would "get" the victim, drove Ridges to find the victim knowing that Ridges had armed himself, joined Cole in encouraging Ridges to kill Adams along with the victim so there would be no witnesses, and walked with Ridges to the door of the residence where Ridges carried out the murder. This evidence was more than sufficient to support the murder conviction. Other discrete evidence supported the charge of accessory after the fact, such as defendant's helping Ridges dismantle the murder weapon and dispose of the parts.

The record reveals that defense counsel argued to the jury that the penalty for first-degree murder is life imprisonment without parole, confirming the jury's commonsense understanding that murder was the more serious offense. The jury, given the opportunity to consider separately the offenses of murder and accessory after the fact, convicted defendant of both, indicating its intent to hold defendant accountable to the fullest extent of the law. Accordingly, we are satisfied that the jury would have convicted defendant of the more serious offense had it been required to choose between the two charges. In light of the overwhelming evidence of first-degree murder, we cannot conclude that a different result would have been probable if the trial court had given a proper instruction. *See Nicholson*, 355 N.C. at 50, 558 S.E.2d at 142.

Because the trial court vacated defendant's conviction of accessory after the fact, he suffers no collateral consequences as a result of that conviction and has not been prejudiced. *Cf. Speckman*, 326 N.C. at 580, 391 S.E.2d at 168 (reversing the defendant's convictions for mutually exclusive offenses when, even though the offenses were consolidated into a single judgment, the defendant nevertheless could suffer potentially severe adverse collateral consequences). Defendant has not satisfied his burden of demonstrating that the trial court committed plain error. The decision of the Court of Appeals is reversed and this case is remanded to that Court for consideration of defendant's remaining assignments of error.

REVERSED AND REMANDED.