**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 15-6467**

───────────

JIHAD RASHID MELVIN,

                    Petitioner – Appellant,

          v.

FRANK L. PERRY; FELIX TAYLOR,

                    Respondents – Appellees.

───────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Fox, Senior District Judge.  (5:13-hc-02269-F)

───────────

Argued:  September 21, 2016          Decided:  October 25, 2016

───────────

Before KING, SHEDD, and THACKER, Circuit Judges.

───────────

Affirmed by unpublished opinion.  Judge Shedd wrote the opinion, in which Judge King and Judge Thacker joined.

───────────

**ARGUED:** Mary Elizabeth McNeill, NORTH CAROLINA PRISONER LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellant. Clarence Joe DelForge, III, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Roy Cooper, Attorney General of the State of North Carolina, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Jihad Melvin appeals the denial of his federal habeas petition pursuant to 28 U.S.C. § 2254. For the following reasons, we affirm.

I

A North Carolina Jury convicted Melvin of first-degree murder and accessory after the fact to murder. The Supreme Court of North Carolina affirmed Melvin's conviction. In doing so, the court summarized the facts pertaining to the underlying crimes.[1]

"At trial, the State presented evidence that, at approximately 11:00 am on 21 March 2007, Melvin drove Robert Ridges (Ridges) and Tony Cole (Cole) to the home of Ridges' brother, Elijah. As Ridges, Cole, and Melvin were driving away after the visit, they spotted the victim, Almario Millander. They waved the victim over to their car, and Ridges sold him a quantity of what was purported to be crack cocaine. As they attempted to leave, however, the car stalled. The victim walked over to the immobilized car, claimed Ridges had sold him counterfeit crack, and demanded his money back. When Ridges denied the accusation, the victim pulled out a sawed-off shotgun and pointed it at Ridges, who was unarmed. Melvin was able to

---

[1] In this summary, we have substituted "Melvin" for "defendant."

2

restart the car and drive away with Ridges and Cole without shots being fired.

"In the aftermath of the encounter, an angry Ridges 'swore on his son' that he was going to 'get' the victim. Ridges left Cole and Melvin for a time, then returned. As the three later 'chilled' and smoked 'weed' at a friend's house, Cole realized that Ridges had obtained a gun when he saw Ridges 'pull[] it out' in Melvin's presence. That same evening, Melvin drove as he, Ridges, and Cole looked for the victim. They came across an individual named Ken Adams, who told them the victim was at Adams's residence. Cole exhorted Ridges: '[G]o in his house, you going to kill this man, you got to kill the other guy too. Can't be no eyewitnesses.' Melvin agreed with Cole but Ridges responded that the victim was the only one he wanted. During this discussion, Melvin briefly took possession of Ridges's pistol, but Ridges retrieved it. Ridges, Cole, and Melvin exited the car and walked toward Adams's residence. Melvin climbed the steps to the rear of the residence, while Ridges entered through the back door. Adams, who was inside, saw Ridges open fire on the victim. As the victim tried to escape through a window, Ridges shot him twice, hitting the victim behind one knee and inflicting a fatal wound to the victim's chest.

"Melvin then drove Ridges and Cole from the scene. They stopped at a gas station where Cole and Ridges made purchases

3

while Melvin waited in the car. After they left, a law enforcement officer attempted to stop Melvin's car using his blue lights and siren. Melvin turned onto a dirt road and accelerated, raising a cloud of dust that caused the pursuing officer to drop back. The car stalled again, so Melvin pulled to the side of the road, and he, Ridges and Cole fled into nearby woods. The officer, who was acting on information indicating only that the vehicle's registration was faulty, stopped at the abandoned car, but, unable to find the occupants and seeing no evidence of a crime, left after a short wait.

"Once the officer departed, Melvin, Ridges, and Cole returned to the car, wiped it down to remove fingerprints, and attempted to set it on fire. They then dismantled the murder weapon and wiped all fingerprints off the pieces." State v. Melvin, 707 S.E.2d 629, 630–31 (N.C. 2010) ("Melvin I").

## II

In 2007, a North Carolina grand jury indicted Melvin for one count of first-degree murder and one count of accessory after the fact to murder. Because no evidence indicated that Melvin had fired the shots that killed the victim, the murder charge was based on the theory that Melvin was an accomplice or acted in concert with the shooter.

Pertinent to this appeal, at a pretrial hearing, Melvin's trial counsel moved the court to sever the offenses on the

4

grounds that first-degree murder and accessory after the fact are legally inconsistent. The trial judge acknowledged that the charges were inconsistent but denied the motion to sever, deciding instead that the appropriate way to deal with inconsistent charges was to set aside one of the judgments in the event the jury convicted Melvin of both offenses. Melvin's trial counsel conceded that this was the correct approach. The jury thereafter convicted Melvin of both charges. The trial judge set aside judgment on the accessory after the fact conviction and sentenced Melvin to life without parole.

On direct appeal, the North Carolina Court of Appeals vacated the judgment and ordered a new trial, holding that the trial court committed plain error by failing to instruct the jury that it could not convict Melvin of both charges. See State v. Melvin, 682 S.E.2d 238, 246 (N.C. App. 2009) ("Melvin II"). The court of appeals concluded that State v. Speckman, 391 S.E.2d 165, 167 (N.C. 1990), required this instruction.[2] The court of appeals found that plain error justified vacating

---

[2] In Speckman, the jury convicted the defendant of two mutually exclusive offenses — embezzlement and obtaining property by false pretenses. The Supreme Court of North Carolina held that, although mutually exclusive offenses "may be joined for trial when they are alleged to arise from the same act or transaction," the court "must instruct the jury that it may convict the defendant only of one of the offenses or the other, but not of both." 391 S.E.2d at 167.

5

Melvin's convictions because "[i]f properly instructed, the jury might have determined that [he] was guilty of accessory after the fact to murder and not guilty of the murder itself." Melvin II, 682 S.E.2d at 244.

Thereafter, the Supreme Court of North Carolina reversed the court of appeals, holding that Melvin did not meet the high burden under plain error review and that it is a "rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." Melvin I, 707 S.E.2d at 633. The court reasoned that the trial court erred, but the error did not justify vacating Melvin's convictions under plain error review because "in light of the overwhelming evidence of first-degree murder, [it] [could not] conclude that a different result would have been probable if the trial court had given a proper instruction." Id. at 633–34.

Melvin subsequently filed a Motion for Appropriate Relief ("MAR") in state superior court. In his MAR, Melvin alleged that he received ineffective assistance of counsel when his trial attorney failed to request the proper jury instruction under Speckman.[3] Melvin contended that his counsel's error was

---

[3] Melvin has never contended that, absent counsel's error, the evidence was not sufficient to convict him of either offense.

prejudicial because, had counsel successfully requested the Speckman instruction, the jury would have been forced to choose between the two charges. If the jury had known they could not convict Melvin of both offenses, he argued, there would be a reasonable probability that the jury would have found him guilty of accessory after the fact but not murder. The superior court denied the MAR, holding that Melvin had "not shown that his counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment or that his performance fell below an objective standard of reasonableness." J.A. 116–117. The MAR court also held that Melvin was not prejudiced because "[t]here is no reasonable probability that, if counsel had not committed the errors asserted by [Melvin], that the trial result would have been different." Id. at 116.

Melvin then filed a petition for writ of habeas corpus in federal court. The district court dismissed the petition, holding that the state superior court reasonably applied Strickland v. Washington, 466 U.S. 668 (1984), in rejecting Melvin's ineffective assistance of counsel claim. Generally speaking, the court determined that the MAR court was correct in determining that trial counsel's representation did not fall below an objective standard of reasonableness and that Melvin was not prejudiced.

7

We review de novo the district court's application of the standards of § 2254(d) to the findings and conclusions of the MAR court. Robinson v. Polk, 438 F.3d 350, 354–55 (4th Cir. 2006). Under this review, our inquiry is limited to an analysis of whether the MAR court's adjudication of Melvin's federal claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

The "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have meanings which may be satisfied independently of each other. Williams v. Taylor, 529 U.S. 362, 404–05 (2000). A state court decision is contrary to clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694 (2002). A state court decision is an unreasonable application of clearly established federal law "if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably

8

applies it to the facts of the particular case." Id. Under this standard, a state court's decision will not be disturbed where it is premised on an incorrect, but not unreasonable, application of federal law. Williams, 529 U.S. at 440. This "is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 171 (2011) (internal punctuation and citations omitted).

As noted, Melvin contends that he was denied his right to effective assistance of counsel because his trial counsel was ineffective in that he failed to request the appropriate jury instruction. "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). In other words, the "result of the proceeding [must be] fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

In Strickland, the Court identified two necessary components of an ineffective-assistance claim: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

9

defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687.

For purposes of this appeal, the "pivotal question is whether the state court's application of the Strickland standard was unreasonable." Harrington v. Richter, 562 U.S. 86, 101 (2011). Under § 2254(d), an unreasonable application differs from an incorrect application of federal law, and a state court "must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Id.

Although Strickland requires a defendant claiming ineffective assistance to establish deficient performance and prejudice, the Supreme Court explained that "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." 466 U.S. at 697. Consistent with the Court's suggested approach, we will proceed directly to the prejudice component.

10

To establish prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. Under Strickland, "[i]t is not enough for [Melvin] to show that the errors had some conceivable effect on the outcome of the proceeding," id. at 693, and "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently," Harrington, 562 U.S. at 111. In short, "Strickland asks whether it is 'reasonably likely' the result would have been different," and the "likelihood of a different result must be substantial, not just conceivable." Id. at 111–12.

Applying this standard of review, we are comfortable that the MAR court did not unreasonably apply Strickland. The MAR court weighed the evidence, concluding that the ample evidence of murder indicated that a properly instructed jury would have still convicted Melvin of murder. Namely, Melvin was involved in the original confrontation between the victim and the shooter. He heard the shooter swear that he would "get" the victim and then drove the shooter around in their search for him. Melvin then encouraged the shooter to kill another man in addition to

11

the victim so that there would be no witnesses. He drove the shooter to the scene of the crime, walked up the stairs to the back door of the residence, and stood outside as Ridges shot the victim. The MAR court reiterated the North Carolina Supreme Court's conclusion that "[t]he jury, given the opportunity to consider separately the offenses of murder and accessory after the fact, convicted defendant of both, indicating its intent to hold defendant accountable to the fullest extent of the law." Melvin I, 707 S.E.2d at 633–34. J.A. 116. Given that the jury was properly charged on the elements of murder and convicted Melvin based on more than sufficient evidence, the state superior court did not unreasonably apply Strickland when it determined that Melvin was not prejudiced by his counsel's error.[4]

---

[4] Melvin also contends that he was prejudiced by counsel's error because it resulted in the application of a more rigorous appellate standard of review on direct appeal. In North Carolina, the standard of review is plain error when a party does not object to an omission from the jury charge. However, if counsel properly objects and the alleged error does not violate the defendant's rights under the United States Constitution, the defendant must only prove that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2013) (emphasis added). Even under the more deferential "reasonable possibility" standard of review, Melvin was still not prejudiced by counsel's error. Given the overwhelming evidence presented at trial, there is no reasonable possibility that, had counsel requested the Speckman instruction, Melvin would not have been convicted of murder.

IV

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. We hold that Melvin has fallen well short of meeting this standard. Therefore, we affirm the district court's dismissal of Melvin's petition for writ of habeas corpus.

AFFIRMED