IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-297

Filed 3 December 2024

Pitt County, Nos. 19 CRS 54103, 708510

STATE OF NORTH CAROLINA

v.

MATTHEW STEPHEN VAUGHN, Defendant.

Appeal by Matthew Stephen Vaughn from judgment entered 23 June 2022 by Judge Marvin K. Blount III in Pitt County Superior Court. Heard in the Court of Appeals 17 October 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Steven C. Wilson, Jr., for the State.*

*The Robinson Law Firm, P.A., by Attorney Leslie S. Robinson, for the defendant-appellant.*

STADING, Judge.

## I. Background

At 3:30 A.M. on 8 June 2019, North Carolina Highway Patrolman Brandon Cruz ("Trooper Cruz") observed a vehicle operated by Matthew Stephen Vaughn ("Defendant"). He was speeding at an estimated sixty miles per hour in a forty-five mile per hour zone. After confirming the speed at sixty-two miles per hour with his radar, Trooper Cruz initiated a traffic stop and Defendant pulled over to the side of the road. Defendant stated that he did not intend to speed. Trooper Cruz smelled an

odor of alcohol coming from Defendant's breath and saw that his eyes were red and glassy. Defendant also told Trooper Cruz that he had consumed an alcoholic drink "about an hour" before the encounter. Trooper Cruz observed a wristband on Defendant and learned he was coming from a "nightclub" located "just a couple of miles" from the stop.

On account of his observations, Trooper Cruz requested that Defendant step out of the vehicle and walk behind his patrol car for the administration of field sobriety tests. When walking, Defendant did not display problems with balance or coordination. The patrol car was equipped with video recording capabilities, but the location to which Defendant was directed for administration of the tests was not captured by the camera. As part of his training, Trooper Cruz had completed a twenty-four-hour course and refresher courses on the administration of standardized field sobriety tests. He had also participated in "hundreds" of driving while impaired investigations. Trooper Cruz began with administration of the Horizontal Gaze Nystagmus ("HGN") test and then the Vertical Gaze Nystagmus ("VGN") test. With respect to the HGN test, Trooper Cruz observed six out of six possible clues present, though VGN was not present. No other field sobriety tests were administered, namely the walk and turn and one-leg stand tests, because Trooper Cruz did not feel "that it [was] safe" to administer those tests in that location.

Next, Trooper Cruz requested that Defendant provide a sample of his breath on a portable breath test ("PBT"). While waiting to obtain a second breath sample,

Defendant sat with Trooper Cruz in the patrol car. At this time, Trooper Cruz noted that Defendant had a blank stare on his face and a strong odor of alcohol on his breath. Defendant stated that he was not "supposed to be driving that particular vehicle due to insurance purposes, especially while drinking and driving." Trooper Cruz then requested a second breath sample from Defendant. Based on the strong odor of alcohol, unfocused eyes, admission to drinking, and field sobriety tests results, Trooper Cruz arrested Defendant for suspected impaired driving. Trooper Cruz then read Defendant his *Miranda* rights. Defendant also received a citation for speeding. Following his arrest, Defendant was transported to the Pitt County Detention Center where he provided a sample of his breath on the Intoxilyzer EC/IR II which showed an alcohol concentration in excess of the legal limit.

The State called Defendant's case for trial in Pitt County Superior Court on 14 June 2022. Pretrial, Defendant moved to suppress evidence of the HGN test and PBT on the grounds that they were improperly administered. Defendant also argued that he exercised his *Miranda* rights, and therefore, video-captured conversation between him and Trooper Cruz occurring after and *contemporaneously* with the invocation of these rights is inadmissible. After seeing the State's video exhibit, the trial court denied the motion to suppress with respect to the HGN test. However, the trial court gave a limiting instruction to the jury for the administration of the first PBT and

excluded all evidence of the second PBT.[1]

At trial, the State offered the testimony of Trooper Cruz and admitted a video of the stop; Defendant cross-examined the trooper and offered into evidence the National Highway Traffic and Safety Administration DWI Detection and Standardized Field Sobriety Testing Participant Manual ("NHTSA Manual").  Nat'l Hwy. Traffic Safety Admin., U.S. Dep't of Transp., *DWI Detection and Standardized Field Sobriety Test Participant Manual* (2018).  Defendant renewed his motions to suppress at trial, which the trial court denied.  The trial court subsequently memorialized its ruling on the motion in a written order.  The trial court also permitted the State to introduce evidence of the *Miranda* rights advisement.  After the trial court's rulings, among other things, the State introduced evidence before the jury of Defendant's HGN clues and Intoxilyzer EC/IR II reported alcohol concentration results of .10 grams of alcohol per 210 liters of breath.  At the close of the State's evidence and close of all the evidence, Defendant moved to dismiss the charges against him for lack of substantial evidence, which the trial court denied.  Subsequently, the jury found Defendant guilty of driving while impaired and speeding.  Defendant timely entered his notice of appeal.

## II.    Jurisdiction

This Court has jurisdiction to consider Defendant's appeal pursuant to N.C.

---

[1] The State did not seek to introduce evidence of the results of either PBT sample.

Gen. Stat. §§ 7A-27(b)(1) (2023) (superior court's final judgment) and 15A-1444(a) (2023) (pled not guilty but found guilty).

### III.    Analysis

Defendant raises five issues on appeal: whether the trial court erred by (1) admitting evidence of the speed results of the radar; (2) admitting video evidence of the advisement of his *Miranda* rights; (3) denying his motion to suppress; (4) admitting evidence of the Intoxilyzer EC/IR II test result; and (5) denying his motion to dismiss.  After reviewing the record, we hold that trial court did not commit error in the first three issues raised by Defendant.  However, for reasons discussed in-depth below, the trial court prejudicially erred in admitting the breath test result without the proper foundation and a new trial is necessary.  Consequently, we do not reach consideration of the trial court's denial of Defendant's motion to dismiss.

### A. Radar Foundation

Defendant first argues that the trial court erred in admitting evidence of Trooper Cruz's radar results because the State failed to establish the requisite foundation for admission.  More precisely, Defendant posits that the trial court committed error by admitting the radar numerical reading because the State failed to elicit the exact name of the agency that approved the radar model, issued the operator's certificate, and inspected the device.  Generally, to preserve an issue for our review, "a party must . . . present[ ] to the trial court a timely objection[ ] or motion [that] stat[es] the specific grounds for the ruling the party desire[s] the court

to make . . . ." N.C. R. App. P. 10(a)(1). Here, when the State sought to introduce evidence of the radar reading to the jury, Defendant's trial counsel preserved this issue for our review by objecting to the lack of foundation of testimony regarding the radar results, seemingly challenging the competency of the witness.

Rule of Evidence 602 states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." N.C. Gen. Stat. § 8C-1, R. 602 (2023). Moreover, Chapter 8, Article 7 of the North Carolina General Statutes sets out the standards for "Competency of Witnesses" under specific circumstances. Relevant here, radar results "shall be admissible as evidence of . . . speed in any criminal . . . proceeding for the purpose of *corroborating the opinion* of a person as to the speed of an object. . . ." *Id.* § 8-50.2(a) (2023) (emphasis added). "Corroborating evidence is supplementary to that already given and tending to strengthen or confirm it." *State v. Burns*, 307 N.C. 224, 231, 297 S.E.2d 384, 388 (1982) (citation omitted).

That said, such results are not admissible unless it is found that:

> (1) The operator of the instrument held, at the time the results of the speed-measuring instrument were obtained, a certificate from the North Carolina Criminal Justice Education and Training Standards Commission (hereinafter referred to as the Commission) authorizing him to operate the speed-measuring instrument from which the results were obtained.
>
> (2) The operator of the instrument operated the speed-measuring instrument in accordance with the procedures established by the Commission for the operation of such

instrument.

(3) The instrument employed was approved for use by the Commission and the Secretary of Public Safety pursuant to G.S. 17C-6.

(4) The speed-measuring instrument had been calibrated and tested for accuracy in accordance with the standards established by the Commission for that particular instrument.

N.C. Gen. Stat. § 8-50.2(b).

North Carolina's Administrative Code ("the Code") provides the Commission's standards regarding certification and implementation of standards. *See* 12 N.C. Admin. Code 9C.0300, 9C0600 (2023). Law enforcement officers using a "speed[-]measuring instrument," shall "hold certification from the Commission authorizing the officer to operate the speed[-]measuring instrument." 12 N.C. Admin. Code 9C.0308(a). And "[s]uch certification is for a three[-]year period from the date of issue and re-certifications is for a three[-]year period from the date of issue, unless sooner terminated by the Commission." 12 N.C. Admin. Code 9C.0308(c). The Code specifies that a list of "approved speed-measuring instruments" is contained in a referenced publication by the North Carolina Justice Academy. 12 N.C. Admin. Code 9C.0601(3). Similarly, the Code "establish[es] the minimum requirements and test methods for determining the accuracy of speed-measuring instruments used by law enforcement agencies," including annual and daily test standards and methods as outlined in a publication by the North Carolina Justice Academy. 12 N.C. Admin.

Code 9C.0607.  Also, "[t]he operating procedures for each specific [r]adar . . . speed-measuring instrument" is outlined in a publication by the North Carolina Justice Academy and incorporated by reference in the Code.  12 N.C. Admin. Code 9C.0608.

Although our Court has not yet addressed the standard of review for testimony corroborating a radar reading, a review of analogous cases supports application of the abuse of discretion standard.  *See State v. Tellez*, 200 N.C. App. 517, 526, 684 S.E.2d 733, 739 (2009) (citation omitted) ("The abuse of discretion standard applies to decisions by a trial court that a statement is admissible for corroboration."); *see also State v. Gettys*, 243 N.C. App. 590, 594, 777 S.E.2d 351, 355 (2015) (citation omitted) (determining abuse of discretion is the standard of review for assessing an evidentiary ruling admitting a recorded interview for corroboration.).  Accordingly, we will apply an abuse of discretion standard of review to the trial court's decision to admit the radar results corroborating the trooper's testimony.  Under this standard, "a trial judge's discretion may be reversed only if it is manifestly unsupported by reason or so arbitrary that it could not have been a reasoned decision."  *State v. Pickens*, 385 N.C. 351, 360, 893 S.E.2d 194, 200 (2023) (citation omitted).

In his testimony about operation of the radar, Trooper Cruz did not specifically note that his certificate was from "the North Carolina Criminal Justice Education and Training Standards Commission" ("the Commission.").  Furthermore, he did not testify that this radar was approved by the Commission.  Nor did Trooper Cruz use the exact words that this radar was operated or calibrated and tested for accuracy in

accordance with the standards of the Commission. Nonetheless, Trooper Cruz testified that he had "a permit to operate" the "approved" radar and referenced the model used. He also stated that he was "certified" from "radar training" and had to "requalify" every three years. Additionally, he explained the steps necessary to operate the radar. Finally, Trooper Cruz testified, "After each traffic enforcement you have to do . . . a tune and fork test. . . . And then once a year we have technicians . . . make sure . . . everything is calibrated correctly. . . ." He followed up by confirming this particular radar had been calibrated.

We are tasked with determining whether the trial court abused its discretion by ruling that the trooper's testimony was sufficient to admit the radar reading under N.C. Gen. Stat. § 8-50.2(b). Defendant urges us to hold that the testimony falls short, and to employ the same logic used by our Court when considering admission of a blood alcohol result as substantive evidence. *See State v. Roach*, 145 N.C. App. 159, 162, 548 S.E.2d 841, 844 (2001) (A proper foundation was not laid to show whether the chemical analyst possessed a current permit issued by the Department of Health and Human Services ("DHHS").); *see also State v. Franks*, 87 N.C. App. 265, 360 S.E.2d 473 (1987) (Witness did not state whether he possessed a permit issued by DHHS on the date he administered the breathalyzer test.). Contrary to Defendant's contentions, we see no parallel application of this reasoning. The radar reading testimony corroborated a "visual estimation" of Defendant's speed. *See State v. Jenkins*, 80 N.C. App. 491, 495, 342 S.E.2d 550, 552 (1986) ("[T]he speed of a vehicle

may not be proved by the results of radar measurement alone and . . . such evidence may be used only to corroborate the opinion of a witness as to speed, which opinion is based upon actual observation.").

By comparison, a chemical analysis result is substantive evidence "deemed sufficient . . . to prove a person's alcohol concentration." N.C. Gen. Stat. § 20-138.1 (2023). When seeking admission of a speed-measuring instrument reading to corroborate the opinion of a witness, evidence of N.C. Gen. Stat. § 8-50.2(b)'s requirements is necessary. However, there is no essential talismanic phrase such as "approved by the North Carolina Criminal Justice Education and Training Standards Commission." As was done here, when the witness provides sufficiently specific testimony permitting the trial court to logically conclude compliance with N.C. Gen. Stat. § 8-50.2(b), the trial court does not abuse its discretion in admitting a radar reading to corroborate speed estimation testimony by a witness.

### B. Evidence of *Miranda* Advisement

Defendant next argues that the trial court violated his state Section Twenty-Three and federal Fifth Amendment constitutional rights when it admitted video testimony of Trooper Cruz reading Defendant his *Miranda* rights. The Self-Incrimination Clauses of both our state and federal Constitutions guarantee defendants' rights against self-incrimination. *See* N.C. Const. art. I, § 23, cl. 3; U.S. Const. amend V, cl. 3. Our state courts generally construe these constitutional protections against self-incrimination via silence under the same *Miranda* rubric.

*See, e.g., State v. McCall*, 286 N.C. 472, 212 S.E.2d 132 (1975) (acknowledging application of *Miranda v. Arizona*, 384 U.S. 436 (1966), to state Self-Incrimination Clause claims). The federal and state constitutions prohibit use of a defendant's post-*Miranda* exercise of his constitutional right to remain silent. *See Doyle v. Ohio*, 426 U.S. 610, 619, 96 S. Ct. 2240, 2245 (1976); *see also State v. Moore*, 366 N.C. 100, 104, 726 S.E.2d 168, 172 (2012). And although a trial court may not permit a defendant's silence to be used against him, under appropriate circumstances, it may admit evidence that a defendant was read and understood his *Miranda* rights. *See State v. Carter*, 335 N.C. 422, 432, 440 S.E.2d 268, 273 (1994) (upholding a trial court's decision to allow evidence that a defendant was read his *Miranda* rights according to law because it tends to refute the characterization of the officers' conduct as unprofessional).

Here, the State sought to introduce a video of Trooper Cruz reading Defendant his *Miranda* rights "to show the jury that [he] advised [Defendant of] his rights" as he was "supposed to do." The trial court, prosecutor, and Defendant's counsel engaged a substantive back-and-forth as to whether showing the footage at all would run afoul of the rights *Miranda* is intended to protect. When advocating for admitting the rights advisement in evidence at trial, the prosecutor noted an argument to the trial court by Defendant's counsel that "implied that [Trooper Cruz] deliberately brought [ ] Defendant out of view of the camera when conducting the HGN test" to attack his professionalism and ability to follow proper procedures. In fact,

- 11 -

Defendant's counsel pursued this exact line of questioning in front of the jury, asking Trooper Cruz "[w]hy didn't you have [Defendant] do [the HGN test] . . . so that the jury could see that on the video?" He proceeded to question the trooper at length about Defendant's placement off-camera while conducting the HGN test.

Defendant's counsel's assertion supposes some relevant evidentiary purpose beyond a bare use of Defendant's silence against him—which the prosecution refrained from at trial. The prosecution also adhered to the trial court's express condition to strictly cut the video off before Defendant responded to the *Miranda* recitation in any manner. And contrary to Defendant's urging, nothing in our precedents indicates that the admission of the reading of *Miranda* rights, standing alone, constitutes error. To constitute error, the admission of such evidence must either impermissibly use the defendant's silence against him or have no relevancy. *See, e.g.*, *Moore*, 366 N.C. at 104, 726 S.E.2d at 172 (holding "the admission of the [defendant's] post-*Miranda* testimony was error" because it impermissibly used his silence against him); *see also Carter*, 335 N.C. at 432, 440 S.E.2d at 273 (holding the trial court's admission of the reading of the defendant's *Miranda* warnings was permissible because it was relevant to rebut defense counsel's attacks on "the professionalism of the conduct of the law enforcement officers who investigated the case"); *see also* N.C. Gen. Stat. § 8C-1, Rule 401 (2023) (defining relevant evidence). Thus, because the State made "[n]o specific inquiry or argument . . . about defendant's silence" as part of its case and such evidence was relevant to rebut assertions

attacking the trooper's conduct, we hold that the trial court did not err in admitting the camera footage of Defendant being read his *Miranda* rights. *Carter*, 335 N.C. at 432, 440 S.E.2d at 273.

## C. Motion to Suppress

Third, Defendant argues that Trooper Cruz lacked the probable cause to arrest him for driving while impaired. In support of his argument, Defendant maintains that the results of an improperly administered HGN test fall short of the necessary threshold to sustain the trial court's finding of probable cause. Moreover, Defendant points to countervailing evidence of his mental acuity and physical dexterity.

A law enforcement officer may arrest a suspect without a warrant only if, as of the arrest, the officer "ha[s] probable cause to suspect him of a crime." *State v. Woolard*, 385 N.C. 560, 570, 894 S.E.2d 717, 725 (2023). Probable cause arises from "a reasonable belief, anchored in specific facts and objectively rational inferences, that a particular person has committed a crime." *Id.* at 570, 894 S.E.2d at 726. "[T]he key question is whether a reasonable officer would find a supported, good faith, and objectively rational basis to suspect a person of a crime." *Id.* at 571, 894 S.E.2d at 726 (citation and internal quotation marks omitted).

### 1. HGN Test Administration

A variable underlying the trial court's probable cause formulation was Defendant's performance on the HGN test. Defendant asserts that the HGN test results were inadmissible because Trooper Cruz purportedly failed to follow the

NHTSA Manual's administration instructions. N.C. R. Evid. 702 governs a trial court's preliminary assessment of an expert's admissible testimony. *See State v. Gray*, 259 N.C. App. 351, 355, 815 S.E.2d 736, 739–40 (2018) (citing N.C. R. Evid 702). Among other requirements not at issue here, the testimony's proponent must show that the expert has the "specialized . . . knowledge, skill, experience, training, or education" sufficient to testify to his own evidentiary opinion. N.C. R. Evid. 702(a). More specifically, an expert witness may testify "solely on the issue of impairment" resulting from an HGN test "administered in accordance with the person's training by a person who has successfully completed training in HGN." *Id.* at 702(a1)(1). "We review a trial court's ruling on admissibility of expert testimony pursuant to Rule 702(a) for an abuse of discretion." *State v. Hunt*, 249 N.C. App. 428, 436, 790 S.E.2d 874, 881 (2016) (citing *State v. McGrady*, 368 N.C. 880, 883, 787 S.E.2d 1, 5 (2016)). And reversal for abuse of discretion occurs "only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *McGrady*, 368 N.C. at 893, 787 S.E.2d at 11 (2016) (citation omitted).

When addressing the minimum qualifications for Trooper Cruz to offer HGN testimony, Defendant's attorney stated, "I don't contest that he's been trained and meets the qualifications to be an expert." Instead, Defendant suggests that Trooper Cruz did not "appl[y] the principles and methods [of the HGN test] reliably to the facts of [his] case." N.C. R. Evid. 702(a)(3). Defendant's argument rests on his assertion that Trooper Cruz did not comply with an extrapolated minimum time

requirement to administer the entire HGN test.  However, Defendant's exhibit, the NHTSA Manual, contains no such requirement.   Aside from the four-second minimum required for the HGN clue of "distinct and sustained nystagmus at maximum deviation," and the VGN clue of "distinct and sustained" nystagmus at "maximum elevation," the other portions of the test require "approximate" rates of speed for proper administration.[2]   The State produced countervailing evidence by extensively questioning Trooper Cruz about the HGN test and following up by confirming that he conducted the test in accordance with his training "in this particular case."   In light of the evidence presented to the trial court, we cannot say that its decision to admit the HGN test results "was manifestly unsupported by reason and could not have been the result of a reasoned decision." *McGrady*, 368 N.C. at 893, 787 S.E.2d at 11.

## 2.  *Probable Cause to Arrest*

The probable cause formula relevant to this case permits an officer to arrest an impaired driving suspect if, "under the totality of the circumstances, he reasonably believes that a motorist consumed alcoholic beverages and drove in a faulty manner or provided other indicia of impairment." *Woolard*, 385 N.C. at 571, 894 S.E.2d at 726 (citation and internal quotation marks omitted).  "The standard of review in

---

[2] *See* Nat'l Hwy. Traffic Safety Admin., U.S. Dep't of Transp., *DWI Detection and Standardized Field Sobriety Test Participant Manual* sec. 8, at 19, 23–24, 29–46 (2018) (discussing various steps of HGN test), https://www.nhtsa.gov/sites/nhtsa.gov/files/documen ts/sfst_full_participant_manual_2018.pdf

evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167–68, 712 S.E.2d 874, 878 (2011) (citation omitted). "However, when . . . the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal." *Id.* at 168, 712 S.E.2d at 878 (citation omitted). "Conclusions of law are reviewed de novo and are subject to full review." *Id.* (citations omitted). "Under a *de novo* review, the Court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.* (citation and internal quotation marks omitted).

Following a comprehensive examination of Trooper Cruz and arguments of counsel, the trial court found sufficient probable cause underlying Defendant's arrest for driving while impaired and denied his motion to suppress. The trial court's written order documented findings of fact in support its ruling: Trooper Cruz's extensive training and experience investigating the detection of impaired drivers; Trooper Cruz observed a vehicle traveling sixty-two miles per hour in a forty-five mile-per-hour zone; upon Trooper Cruz stopping the vehicle for speeding, Defendant was in the driver's seat; Trooper Cruz noted Defendant had an odor of alcohol coming from his breath and red, glassy eyes when initially speaking with him; Defendant admitted to drinking one hour prior; Trooper Cruz conducted the HGN test on Defendant and observed "all six out of the six possible clues;" Trooper Cruz observed

Defendant "swaying slightly" while conducting the HGN test; and later on, Trooper Cruz observed a "blank stare" on Defendant's face and "a very strong odor of alcohol" coming from his breath. Considering its findings, the trial court concluded that "Trooper Cruz possessed sufficient reliable and lawfully-obtained information at the time of [Defendant's] arrest to constitute a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that [Defendant] was guilty of driving while impaired."

Defendant does not challenge any of the findings contained in the trial court's order; accordingly, they are deemed supported by competent evidence. *See Biber*, 365 N.C. at 168, 712 S.E.2d at 878. We therefore review the conclusions of law *de novo*. *See id.* Considering the totality of the circumstances, the trial court's order detailed sufficient findings to support the trooper's reasonable belief that Defendant consumed alcohol, drove in a faulty manner, and displayed other indicia of impairment—including his performance on the HGN test and swaying. *See Woolard*, 385 N.C. at 571, 894 S.E.2d at 726. The trial court's conclusions of law are adequately supported by its findings of fact. *See Biber*, 365 N.C. at 167–68, 712 S.E.2d at 878 (2011). Our *de novo* review leads us to hold that the trial court did not commit error by denying Defendant's motion to suppress.

**D. PBT Administration**

Defendant also argues that the trial court erred in allowing the State to present video evidence to the jury showing he submitted to a PBT since the device's

results had been excluded from evidence. As noted, this Court reviews questions of evidence admission for abuse of discretion by the trial court. *State v. Moultry*, 246 N.C. App. 702, 706, 784 S.E.2d 572, 574 (2016) (citation omitted) ("When a defendant objects to the admission of evidence, we consider, whether the evidence was admissible as a matter of law, and if so, whether the trial court abused its discretion in admitting the evidence."). A trial court may admit otherwise inadmissible hearsay evidence that speaks to a defendant's "then existing state of mind . . . or physical condition[.]" N.C. R. Evid. 803(3). Such evidence is admissible if "the trial court properly instruct[s] the jury as to the limited use of this evidence," and the defendant "fail[s] to show prejudice from the admission of these statements." *State v. Taylor*, 344 N.C. 31, 49, 473 S.E.2d 596, 607 (1996). Absent evidence to the contrary, we presume that a jury "follow[s] a trial court's instructions." *State v. Prevatte*, 356 N.C. 178, 254, 570 S.E.2d 440, 482 (2002) (citation omitted).

Here, Defendant does not raise enough material facts to credibly attack the PBT dashcam's admission as an abuse of discretion. Trooper Cruz's improper administration of the second PBT—which the State conceded—is a separate issue. The footage itself has a "tendency make the existence of" Defendant's impairment "more probable" to the jury's factfinding "than it would be without the evidence." N.C. R. Evid. 401. Aware of the potential prejudice to Defendant, the trial court on multiple occasions instructed the jury to assess the footage only to determine Defendant's "demeanor and behavior." Thus, this Court holds that trial court did not

err by admitting the dashcam footage of Defendant's otherwise inadmissible PBT.

### E. Intoxilyzer EC/IR II Results

Defendant next argues the trial court erred by permitting the admission of his breath test result in evidence. His argument is premised on the assertion that the State did not show the test was performed in accordance with the rules of DHHS by failing to offer evidence of two sequential breath samples that did not differ by more than .02 grams of alcohol per 210 liters of breath. In further support of his position, Defendant cites the operational procedures prescribed in 10A N.C. Admin. Code 41B.0322 (2023).

The statutory procedures governing chemical analyses permit the admission of breath test results if: (1) the test is performed in accordance with the rules of DHHS; and (2) the operator had a current permit issued by DHHS authorizing the operator to perform a test using the type of instrument used. N.C. Gen. Stat. § 20-139.1(b) (2023). Additionally, "the testing of at least duplicate sequential breath samples" is required. *Id.* § 20-139.1(b3). Further, "[t]he results of the chemical analysis of all breath samples are admissible if the test results from any two consecutively collected breath samples do not differ from each other by an alcohol concentration greater than 0.02." *Id.* And "[o]nly the lower of the two test results of the consecutively administered tests can be used to prove a particular alcohol concentration." *Id.*

Defendant challenges that the State did not meet its burden with respect to

the first subsection of N.C. Gen. Stat. § 20-139.1(b). Compliance with 10A N.C. Admin. Code 41B.0322 fulfills the requirement of N.C. Gen. Stat. § 20-139.1(b)(1). This Code subsection prescribes an eight-step process for operating the Intoxilyzer EC/IR II. 10A N.C. Admin. Code 41B.0322. "If alcohol concentrations differ by more than 0.02," additional breath samples must be collected. *Id.* The breath sample collection process outlined in the Code is reflected in N.C. Gen. Stat. § 20-139.1(b3).

Failure to offer evidence of compliance with the statutorily prescribed methods of administering the test renders the result inadmissible. *See State v. Gray*, 28 N.C. App. 506, 506, 221 S.E.2d 765, 765 (1976) (holding that the defendant was entitled to a new trial when the trial court committed prejudicial error by admitting breath test results over the defendant's objection after the State failed to establish compliance with the procedures outlined in N.C. Gen. Stat. § 20-139.1).[3] The State may "prove compliance with these two requirements in any proper and acceptable manner." *State v. Powell*, 10 N.C. App. 726, 728, 179 S.E.2d 785, 786 (1971).

Trooper Cruz testified that the Intoxilyzer EC/IR II is "the instrument that we use . . . when we arrest somebody for DWI[,] we take them to the . . . Pitt County Detention Center and then we have them provide two [ ] breath samples . . . to give a reading of alcohol concentration." However, noticeably absent from the record is any

---

[3] Each case presents unique facts with some bearing greater evidence of impairment than others, but when considering the particular facts of *State v. Gray*, 28 N.C. App. 506, 221 S.E.2d 765, the Court determined that "the failure of the State to produce evidence of the test operator's compliance with G.S. 20-139.1 (b) must be deemed prejudicial error."

evidence from which the trial court could have gleaned the foundational requirement that the two consecutively collected breath samples do not differ from each other by an alcohol concentration greater than 0.02. *See* N.C. Gen. Stat. § 20-139.1(b3); *see also* 10A N.C. Admin. Code 41B.0322. Testimony simply noting the test is performed in accordance with the rules of DHHS could have met this requirement; yet the record is completely devoid of such evidence. *See State v. Powell*, 279 N.C. 608, 611, 184 S.E.2d 243, 245 (1971) (holding evidence was sufficient to meet the requirements of G.S. 20-139.1(b) since the officer had a valid permit to conduct the analysis and testified that he made the analysis in this case according to methods approved by the State Board of Health, now identified as DHHS).

Therefore, when the State moved to admit its exhibit displaying Defendant's breath test result, Defendant objected to the foundation. The trial court judge overruled Defendant's objection and accepted the breath test exhibit into evidence. Next, the State asked for the trooper's testimony of the breath result, and Defendant objected a second time to foundation. Again, the trial court judge overruled Defendant's objection, and the result was stated before the jury. In the absence of some form of compliance with both requirements of N.C. Gen. Stat. § 20-139.1(b), we are constrained to hold that these rulings amounted to prejudicial error. *Gray*, 28 N.C. App. at 506, 221 S.E.2d at 765.

Following admission of the breath test result into evidence, the State finished direct examination of the trooper, and the jurors left the courtroom for a break.

During this break, the State brought a matter to the attention of the trial court:

> The reason I hesitated about – when I was about to ask the trooper if there's anything that had been altered or changed, that's because we did white-out the second test per request of the Defendant . . . . We had no objection to that, but I just wanted to clarify that for the record.

In light of this conversation, the State argues for the application of invited error on appeal. While a defendant suffers no actual prejudice from an alleged error caused by relief he sought in the first place, we are presented with a wholly separate issue. *See* N.C. Gen. Stat. § 15A-1443(c) (2023); *see also State v. Crane,* 269 N.C. App. 341, 343, 837 S.E.2d 607, 610 (2020). Here, the record does not contain a single piece of evidence from which the trial court could have known whether the two sequential breath samples did not differ by more than 0.02 *at the time* the breath test result was ruled admissible. Furthermore, nothing in the record shows that the trial court ever had any information about the second reading that was redacted, *i.e.*, what was behind the white-out. The State's argument would have merit if the record contained evidence of a colloquy between the parties in the presence of the trial court discussing the redaction of the result *before* the admission of the result, or evidence of a stipulation to that effect. But that is not the case and the record shows that the State simply did not meet the minimal requirements of N.C. Gen. Stat. § 20-139.1(b).

## F. Motion to Dismiss

Since trial court erred in admitting the breath test result without the requisite foundation, at this time we are unable to address Defendant's last argument that

trial court also committed error by denying his motion to dismiss his charges for lack of substantial evidence.

## IV.    Conclusion

For the reasons discussed above, this Court holds that trial court did not commit error by admitting evidence of Trooper Cruz's radar gun results, admitting evidence of Defendant's taped advising of his *Miranda* rights, or denying Defendant's motion to suppress evidence of impairment for lack of probable cause.  However, the record leads us to the inescapable conclusion that the State failed to lay the proper foundation permitting admission of Defendant's breath test result from the Intoxilyzer EC/IR II.  We are bound by precedent to hold that admission of the breath test result into evidence by the trial court constitutes prejudicial error and entitles Defendant to a new trial.


NEW TRIAL.

Judges ZACHARY and WOOD concur.